LAW OFFICES OF
# FREDERICK K. BREWINGTON
ATTORNEYS AND COUNSELORS AT LAW
50 CLINTON STREET, SUITE 501
HEMPSTEAD, N. Y. 11550

TELEPHONE: (516) 489-6959
FACSIMILE: (516) 489-6958

**FREDERICK K. BREWINGTON**

--------

**IRA FOGELGAREN**

--------

**GREGORY CALLISTE, JR.**
**VALERIE M. CARTRIGHT**
**G. WILLIAM GERMANO, JR.**
**MARJORIE MESIDOR**

April 26, 2010

*VIA ECF AND FIRST CLASS MAIL*
Magistrate Judge Michael L. Orenstein
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722-9014

    Re:    Russo v. Estee Lauder Corporation, et.al.
               Docket No.: CV-08-03965 (TCP)(MLO)

Dear Magistrate Judge Orenstein:

     We represent the plaintiff and third-party defendant, Daniel Russo and third-party defendant, Frederick K. Brewington in the above-referenced matter. Please allow this letter to serve as our response to Defendants' request for the Court's intervention as to the purported outstanding discovery matters of: the requested privilege log, the return of document allegedly inadvertently produced and the inspection of the original copies of certain documents.

     As a preliminary matter, Plaintiff sent Defendants the requested privilege log on April 19, 2010 via first class mail (See Exhibit A) In addition, Plaintiff is not in possession of the original copy of the documents requested by Defendants for inspection. If and when same becomes available, Defendants will be notified. (See Exhibit B)

### Documents Were Produced Intentionally and Request for Return of Documents is Untimely

     The Defendants' contention that the documents were inadvertently produced is without merit. A careful review of the series of letters that Defendants have attached to their correspondence to the court will reveal that Defendants seek the return of one hundred and thirteen (113) documents that were produced. These documents were obviously reviewed before disclosure, carefully prepared and a decision was made to provided them as part of regular discovery. In fact, as stated in Plaintiff's January 13th letter to Defendants and is required under Rule 26 of Federal Rules of Procedure, Defendants provided a detailed description of the documents that were being disclosed. For Defendants to now state that the documents were "inadvertently" disclosed is erroneous. Rather, it seems more likely that Defendants changed their mind regarding the disclosure and now seek the documents returned as they may be potentially damaging to Defendants' case.

There was an inordinate delay of approximately 30 days as to when Defendants notified Plaintiffs of the alleged inadvertent production of the documents of the first set of documents. Due to Defendants' failure to duly notify Plaintiff of their intention to retrieve the documents and Plaintiff's reliance on the documents as produced, a return of these documents would greatly prejudice Plaintiff. See Prescient Partners, L.P. v. Fieldcrest Cannon, 1997 U.S. Dist. LEXIS 18818 at *6 (S.D.N.Y November 26, 1997) ("Inordinate delay in claiming the privilege can prejudice the adversary and may be deemed a waiver.")

## Documents Produced are Responsive and Not Privileged

At no time in their request did they indicate the first set of documents were privileged, rather only non-responsive, a view that Plaintiff vehemently disagrees (See Defendants' Exhibit A). The dates, subject matter and individuals disclosed in said documents are relevant, entirely responsive to Plaintiff's discovery demands and are likely to lead to discoverable information. For instance, in the first few pages of the disclosure, it is revealed that there was a communication between Gary Gershenbaum, an employee of Estee Lauder and Plaintiff Russo on or about December 1, 2003. The date of this communication is especially relevant as that was a time when Plaintiff's counsel and Estee Lauder's former counsel were heavily involved in settlement negotiations, including Plaintiff's long term disability. Further, the disclosed documents have already revealed helpful information for discovery, including non-party witness Gary Gershenbaum, as well as the detailed involvement of Latricia Parker. The information may further be helpful in finding comparators and/or other witnesses that may possess discoverable information.

Furthermore, in addressing Defendants' concern regarding the sensitive and confidential information contained within these documents, as officers of the court, we currently have no intention or see any need of using this information for any purpose other than the instant litigation.

As to the emails between Ms. Jennings and Estee Lauder employee, Karyn DeVoti, the return of these documents is without basis in case law. The attorney client privilege that Defendants claim have been waived in two respects: (1) they voluntarily produced the privileged document and as such waived any claim of privilege and (2) Defendants have put the privileged communications in the emails in issue by virtue of their counterclaims and defenses seeking to prejudice the opposing party by using the privilege as both a sword and a shield.

## Privilege is Waived

As a general rule, the voluntary production of a privileged document waives any claim of privilege with respect to that document." United States v. Rigas, 281 F. Supp. 2d 733, 737 (S.D.N.Y. 2003). However, the inadvertent production of privileged documents does not waive privilege unless the producing party's conduct was "so careless as to suggest that it was not concerned with the protection of the asserted privilege."Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc., 232 F.R.D. 160, 163 (E.D.N.Y. 2005) (citing SEC v. Cassano, 189 F.R.D. 83, 85 (S.D.N.Y. 1999)).

The first factor to consider is the extent to which defendant undertook reasonable precautions to avoid disclosure. Lois, 104 F.R.D. at 105. The reasonableness of a party's actions to protect privileged information is measured "in light of the risks foreseeable to that party at the time the precautions were taken." Rigas, 281 F. Supp. 2d at 739. Where attorneys employ fairly "extensive and rigorous procedures" when reviewing and producing documents, privilege is generally found not to have been waived and the production of any privileged documents is deemed inadvertent. Aramony v. United Way

of Am., 969 F. Supp. 226, 236 (S.D.N.Y. 1997) Defendants have not proffered any evidence of the extensive and rigorous procedures it underwent to prevent the inadvertent production of privileged documents. Furthermore, it should be noted that these documents were produced at the same time of the other 113 documents that Defendants now seek return and none of them were listed on any privilege log. If Defendants intention was to guard against involuntary disclosures, then at the time the first faux passe was discovered, it would have been prudent for Defendants to engage in a second level review of the remainder of the documents produced to identify any purported errors. However, as admitted by Defendants in their motion to the Court, their first request for the return of these documents was at the deposition of Ms. Jennings when one of the alleged documents was being marked. As such, it would be reasonable to infer that no such second level review took place.

The fact that Defendants could have done a second level review and either did not or failed to catch another purported error furthers the inordinate delay in their claiming a privilege of the documents produced. Defendants first apprise Plaintiff three (3) months after their disclosure, of their desire to retrieve these documents. As noted above in Prescient Partners, the inordinate delay in claiming the privilege can prejudice the adversary and be deemed a waiver.

## Defendants Intend to Use the Privilege as a Sword and a Shield

Subject matter waiver is a form of implied waiver "which allows the attacking party to reach all privileged conversations regarding a particular subject once one privileged conversation on that topic has been disclosed," and is rooted in "fairness considerations at work in the context of litigation." In re von Bulow, 828 F.2d 94,103 (2d Cir. N.Y. 1987) In applying subject matter waiver, courts have invoked the metaphors of "sword" and "shield" to describe the type of strategic assertion of privilege that would implicate fairness considerations. See, e.g., id.; Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 1997 U.S. Dist. LEXIS 20692, No. 95- CV-8833, 1997 WL 801454 at *1 (S.D.N.Y. Dec. 31, 1997); Kidder Peabody, 168 F.R.D. at 473; Stratagem Development Corp., v. Heron Intern. N.V., 153 F.R.D. 535, 545 (S.D.N.Y. Feb. 28, 1994). In federal court, a party may not use the attorney-client privilege as both a sword and a shield. United States v. Bilzerian, 926 F.2d 1285, 1292, 1991 U.S. App. LEXIS 66 (2d Cir. 1991). The privilege "may implicitly be waived when a defendant asserts a claim [or defense] that in fairness requires examination of protected communications." Id.

Here, Defendants in their Answer to the Amended Complaint state repeatedly that Defendants provided CNA information regarding Mr. Russo's employment status within a timely matter (See Exhibit B, Paragraphs 48-50), thus placing any communication regarding those efforts or lack thereof at issue. Defendants indicate further in paragraph 58 of their Answer a denial of sufficient knowledge as to Mr. Russo' LTD qualifications for benefits and that Mr. Russo was not an active employee at the time of Mr. Russo's LTD application. This issue is at the heart of Defendant's defense as to whether they breached their obligations under the Settlement Agreement with Mr. Russo by (1) failing to assist him in obtaining LTD benefits and (2) failing to report to CNA the parties' agreement that Mr. Russo date of termination would be February 20, 2009 for the purposes of all his benefits. Defendants now seek to prohibit Plaintiffs from using documents, dated after the execution of the settlement agreement and produced by Defendants, that discuss Defendants' willful refusal to provide Mr. Russo or CNA with any information regarding his status as an active employee of Estee Lauder for the purposes of obtaining LTD benefits. (See Exhibit D) Thus, Defendants are attempting to use the privilege as a sword and a shield.

Based on the foregoing, we respectfully request, that the Court deny Defendants request for any of the of the documents as any privileged claim is waived and their production of same is voluntary. Finally, we request that Defendant bare the legal cost of the opposition to this motion.

Respectfully submitted,

MARJORIE MESIDOR

MMX

cc: Terri L. Chase, Esq. (*via fax & ECF*)
Mr. Daniel Russo (*via regular mail*)