UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
DANIEL RUSSO,

                    Plaintiff,                       **08-CV-3965 (TCP)**

    -against-

                                             **MEMORANDUM**
                                             **AND ORDER**
ESTÉE LAUDER CORP., E-L
MANAGEMENT CORP., ESTÉE
LAUDER COSMETICS, LTD.,

                    Defendants.
---------------------------------------------------------X
DANIEL RUSSO and FREDERICK K.
BREWINGTON,

              Plaintiff-Third Party Defendants,

    -against-

THE ESTÉE LAUDER COMPANIES, INC.,
ESTÉE LAUDER CORP., E-L MANAGEMENT
CORP., ESTÉE LAUDER COSMETICS, LTD.,

             Defendants-Third Party Plaintiffs.
---------------------------------------------------------X
PLATT, District Judge.

      Before the Court is defendants' motion for summary judgment pursuant to Federal Rule

of Civil Procedure 56.[1] Also before the Court is plaintiff-third party defendants' motion for

summary judgment on defendants-third party plaintiffs' complaint.  Defendants also move to

strike certain statements and documents from plaintiff's opposition to their motion for summary

judgment.  Finally, defendants move for sanctions against plaintiff and his attorney for violating

their obligations pursuant to Federal Rule of Civil Procedure 11.

---

1.  The complaint originally named Estée Lauder's employee John Previte as a defendant.  Previte's motion to
dismiss for failure to timely and properly effectuate service was granted by Order dated July 27, 2010 (DE 68).  The
Clerk of the Court is hereby directed to amend the caption in this case in conformance with the above.

As set forth below, defendants' motion for summary judgment on plaintiff's complaint is hereby **GRANTED**.  Plaintiff-third-party defendants' motion for summary judgment on defendants-third-party plaintiffs' complaint is hereby **DENIED**.  Defendants' motion to strike is hereby **GRANTED** in part and **DENIED** in part.  Defendants' motion for sanctions is hereby **DENIED**.

## I.      Estée Lauder's Motion to Strike

Estée Lauder moves to strike certain portions of plaintiff's memorandum in opposition to defendants' motion for summary judgment as well as portions of plaintiff's 56.1(b) counter-statement as unsupported by citations to admissible evidence.  In addition, Estée Lauder moves to strike certain exhibits appended to the declaration of plaintiff's counsel Marjorie Mesidor because these exhibits are unauthenticated inadmissible documents.

To ascertain what evidence will be considered in deciding Estée Lauder's motion for summary judgment, its motion to strike will be considered first.  As set forth below,  defendants' motion is granted in part and denied in part.

### A.      Legal Standard

Local Rule 56.1(a) for the Southern and Eastern Districts requires the party moving for summary judgment to submit " a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried."  In addition, "each statement by the movant or opponent . . .  must be followed by citation to evidence which would be admissible" under the Federal Rules of Evidence.  Local Rule 56.1(d).  A court may strike those statements which are unsupported by their citations or the cited materials themselves. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001).  *See Watt v. New York Botanical*

*Garden*, No. 98 Civ. 1095, 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000) ("[T]he rules of

this Court state that where there are no citations or where the cited materials do not support the

factual assertions in the Statements, the Court is free to disregard the assertion.").

Meanwhile, Federal Rule of Civil Procedure ("FRCP") 56(c)(4) requires that affidavits

offered in support or in opposition to a summary judgment motion "be made on personal

knowledge, set out facts as would be admissible in evidence, and show that the affiant is

competent to testify to the matters" stared therein.  Where an affidavit or declaration contains

material that does not comply with Rule 56(c)(4), a Court may either disregard or strike it from

the record.  *Rus, Inc. v. Bay Indus*., 322 F. Supp. 2d 302, 307 (S.D.N.Y. 2003).

### B.   Defendants' Motion to Strike Portions of Plaintiff's 56.1(b) Counter-Statement

Defendants contend that almost half of the paragraphs in plaintiff's Local Rule 56.1(b)

counter-statement fail to controvert defendants' corresponding 56.1(a) assertions.  They argue

that plaintiff merely disputes their contentions without providing citations to admissible evidence

that supports his opposition.

Plaintiff complains that certain of defendants' 56.1(a) statements did not consist of short

and concise statements of material facts but instead quoted long passages of text from the

Settlement Agreement, which do not belong in a 56.1 statement.  Plaintiff also urges that some of

defendants' statements consist of legal conclusions and unsupported conclusory statements and

are, therefore, contrary to our Local Rule requirements.  Consequently, plaintiff claims he was

warranted in asking that the Court disregard those statements.

Pursuant to Local Rule 56.1(c), "[e]ach numbered paragraph in a statement of material

facts set forth in the statement required to be served on the moving party will be deemed

admitted for the purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  "When a party has moved for summary judgment on the basis of asserted facts supported as required by FRCP 56(e), and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

Summary judgment may not, however, be granted based merely on a party's failure to controvert its opponent's proposed statement of facts. *See Holtz*, 258 F.3d at 74 ("The local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.").  Thus, even when a party's Local Rule 56.1 counter-statement fails to specifically controvert the opposing party's assertions, "unsupported assertions must nonetheless be disregarded and the record independently reviewed." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).  *See Taylor v. Harbour Pointe Homeowners Ass'n*, No. 09 Civ. 257, 2011 WL 673903, at *1 n.1 (W.D.N.Y. Feb. 17, 2011) (noting that where a plaintiff fails to controvert a 56.1 statement, "the facts set forth in defendant's Local Rule 56.1(a) Statement are deemed admitted to the extent they are supported by the record evidence") (citing *Bonilla v. Boces*, No. 06 Civ. 6542, 2010 WL 3488712, at *1(W.D.N.Y. Sept. 2, 2010)).

After an independent review of the record, the Court deems the following facts from defendants' 56.1(a) statement admitted because it finds they are relevant material facts supported

by admissible evidence: 6, 10-14, 16, 20, 24, 25, 28, 29, 31, 33, 39, 41-43, 45, 46, 50-53 and 57.

Paragraph 15 of defendants' 56.1(a) statement is deemed admitted to the extent that the Agreement defines the "Effective Date" as "the date of actual receipt by Estée Lauder's counsel" of documents related to the discontinuance of the 2003 action.  None of the cited evidence, however, demonstrates that Estée Lauder's received the documents no earlier than January 14, 2004, the date of the filing of the Stipulation of Discontinuance in the 2003 action.

Paragraph 34 is deemed admitted to the extent that Russo testified that he believed his last day worked was January 9, 2003.  Dec. Mesidor, Exh. C, Tr. Russo 132:20-133:6. Accordingly, defendants' motion to strike portions of plaintiff's 56.1(b) statement is hereby granted to the extent indicated above.

### C.    Defendants' Motion to Strike Factual Assertions in Plaintiff's 56.1 Statement

Defendants contend that if the factual assertions and cited authority in their's and plaintiff's statements are compared, the authorities cited by plaintiff in certain paragraphs of his 56.1(b) statement do not support his factual assertions and do not contradict Estée Lauder's factual assertions.  Plaintiff argues that defendants mischaracterize and misquote the evidentiary support relied upon and his responsive statement highlights these inconsistences.

"[A] Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record."  *Giannullo*, 322 F.3d at 140.  Rather, where the record contains no support for a party's factual assertion, such statements are properly stricken.

Based on its independent review of the record, including the deposition testimony and documents cited by the parties in their statements, the Court deems the following paragraphs from defendants' 56.1(a) statement admitted: 17, 21-23 and 44.

Defendants' paragraph 18 is deemed admitted to the extent that plaintiff testified that the insert to the Settlement Agreement is unambiguous and sets forth the terms of the parties' agreement, which, according to plaintiff, obligated Estée Lauder to treat him as an active employee through February 29, 2004 for the purposes of the LTD plan.

With regard to defendants' paragraph 40, Estée Lauder's long-term disability carrier Continental Casualty Company ("CNA") representative Sauerhoff testified that after plaintiff's LTD application was denied and during the appeals process, said plaintiff argued that he was disabled, as that term is defined under Estée Lauder's LTD plan, prior to January 9, 2003 and he continued to make that argument throughout the appeals process.  Dec. Mesidor, Exh. D., Tr. Sauerhoff 60:6-16.  Sauerhoff also testified that at the end of his appeal request, he advised CNA that he had enclosed several pay stubs proving his salary and deductions for his LTD benefits after January 9, 2003.  *Id.* at 60:20-24.  Sauerhoff further testified that plaintiff never submitted any medical information supporting his claimed inability to continue working full-time prior to the time he was terminated.  *Id.* at 64:7-18.  Nor did he provide any information to CNA indicating that his last day worked was anything other than January 9, 2003.  *Id.* at 67:20-23.

As to paragraph 48, plaintiff's attorney in his ERISA litigation (brought after CNA denied plaintiff's appeal) requested that Estée Lauder's then counsel write to CNA to advise them that plaintiff's eligibility under the LTD plan extended through February 29, 2004.  Russo Dep., Exh. V.  Plaintiff's attorney noted that on March 2, 2004, Latricia Parker wrote, in a term life insurance conversion form which says nothing about plaintiff's LTD benefits, that the date plaintiff's employment or eligibility terminated "2-29-04 settlement in lieu of severance."  *Id.*

Accordingly, defendants' motion to strike factual statements in plaintiff's 56.1(b)

counter-statement is granted to the extent set forth above.

**D.      Defendants' Motion to Strike Particular Documents**

**1.      The 2004 Previte Memorandum**

In opposing defendants' motion for summary judgment, plaintiff submits a memorandum purportedly authored by former Estée Lauder employee John Previte ("Previte Memo" or "memo").[2]  The memo supports plaintiff's assertion that Estée Lauder advised Previte that plaintiff's benefits had been extended through February 29, 2004.  Defendants contend that the Previte Memo has not been and cannot be authenticated and move to have the document stricken.

The memo, dated March 10, 2004, bears the Estée Lauder Inc. company name and purports to be "Inter Office Correspondence."  It is addressed to "File" from "John Previte" and concerns "Employee: Daniel T. Russo."  After Previte's name, there are two sets of initials.  The initial closest to Previte's name appears to be a capital "P."  The other set appears to be a capital "J" and a lowercase "c" with a circle around the letters.  The body of the memo states:

> I have been informed by Corporate HR that all of Mr. Russo's benefits have been extended through February 29, 2004.  Corporate will process his conversion of life insurance as well as his Long Term Disability Claim.  All future inquiries must be directed to corporate HR.

---

2.  John Previte was a named defendant in this action.  During plaintiff's employment with Estée Lauder, Previte was Director of Human Resources ("HR").  His employment with Estée Lauder was terminated on September 13, 2005. Def. Answ. ¶ 13.  Previte's motion to dismiss this case as to him for failure to properly effectuate service of process was granted by Order dated July 27, 2010.  DE 68.

Plaintiff Russo testified that following his November 2009[3] deposition in this case, he received, by regular mail from an unknown sender, an envelope containing only the Previte Memo. Dec. Chase, Exh. I, Tr. Russo 349:14-350:10; 351:25-352:2. According to plaintiff Russo, the memo came in a large white envelope personally addressed to him. Nothing was handwritten on the envelope, including his address, which he described as being on some sort of label. He testified that he believed the return address was 767 Fifth Avenue, but that he could be wrong. He also testified that he thought the envelope had blue letters or blue writing on it and that "Benefits" or "something was written on it." Russo testified that he threw out the envelope and gave the document to his attorney. *Id.* at 350:2-351:24.

Plaintiff contends that defendants fail to state a legal basis for questioning the authenticity of the Previte Memo. He notes that he testified as to how the memo came into his possession via the United States Postal Service. Plaintiff also claims that during John Previte's deposition, he testified that a Joann Carubia may have been the author of the document. Plaintiff argues that Joann Carubia's affidavit is self-serving and biased because she is an employee of Estée Lauder. He also complains that the weight and credibility of Carubia's affidavit raises issues of fact with regard to Estée Lauder's patterns and practices of drafting, preparing and filing inter office memoranda. Russo contends this is particularly true with respect to Carubia's statement that "Estée Lauder, Inc." letterhead was not used for an interoffice memoranda.

Federal Rule of Evidence 901(a) provides that documents are authenticated if the proponent of the evidence produces "evidence sufficient to support a finding that the item is

---

3. During Russo's subsequent deposition, opposing counsel's question at 350:9 reads "[w]as it in November of 2003?" Plaintiff was actually deposed on November 4, 2009 and Russo has testified that he received the document subsequent to his November 2009 deposition. Dec. Chase, Exh. I, Tr. Russo.

what the proponent claims it is." "Direct testimony by a knowledgeable witness certainly satisfies the rule." *John Paul Mitchell Systems v. Quality King Distributors, Inc*., 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000) (citing Fed. R. Evid. 901(b)). "A party could also satisfy the authentication requirement if the document's form and content, taken with other circumstances, indicate that the document is reliable." *Id.*

John Previte, the purported author of the memo, testified that in March 2004, he was a trainer for Estée Lauder and had nothing to do with Russo. Dec. Chase, Exh. J, Tr. Previte 39:23-40:4. With regard to the initials near the "From: John Previte" portion of the document, Previte testified that he did not believe them to be his and nor did he recognize them as belonging to anyone with whom he worked. *Id.* at 40:5-14. He also testified that when he went to the trainer position in January 2004, he no longer had discussions regarding employee relations issues. *Id.* at 41:20-42:8. Previte stated that prior to January 2004, no one him asked to provide documents or information concerning Russo and nor did he meet with anyone with regard to extending plaintiff's benefits. *Id.* at 42:9-17.

John Previte also testified to the following concerning extending Russo's benefits:

> I wouldn't be the one to do that. It would be a benefits person or Mr. Creft. It was not my decision, and, quite frankly, this does not look like a memo that I would have written, because I always use my middle initial and it's not here, and I don't know what this ID number is, and those don't look like my initials to sign something.

*Id.* at 42:17-24. Previte also testified that Joann Carubia worked with and served as an assistant to him while he worked as a director and she remained in human resources after he left that position. *Id.* at 42:25-43:19. When asked about the circled initials, Previte responded: "It looks

-9-

like JC, but Joanne [sic] did not have my approval after when I left there to ever sign my name on anything." *Id.* at 43:24-44:4.

Considering Previte's testimony, i.e., that he was no longer a director at the time the memo was purportedly written; that he did not recognize either set of initials; that no one discussed extending Russo's benefits with him; that he was not the benefits person; that the memo's format did not resemble one he would have written; that he did not recognize the use of an identification number; the lack of his middle initial and that the written initial was unfamiliar to him; and, finally, that Joann Carubia did not have his permission to sign his name after he left, Previte is incompetent to authenticate the memo.

Nor may plaintiff authenticate the document merely by testifying that he received it by regular United States mail.  In the first instance, his receipt of the document does not prove that Previte authored it or that its contents are true.  Secondly, Russo is unable to even authenticate receipt of the document because he discarded its envelope.

Furthermore, other circumstances surrounding the document render it unreliable. According to Joann Carubia's affidavit,[4] from 2001 until late December 2003 or early January 2004, she reported directly to Previte, who was then Human Resource Generalist.  When Previte moved into his training position in late December 2003 or early January 2004, Carubia began

---

4.  Plaintiff protests against use of the Carubia affidavit on the basis that it is self-serving and the information was not disclosed during discovery.  Pursuant to FRCP 56(c)(4), however, affidavits or declarations which are made on personal knowledge and "set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated" may be used to support or oppose a motion for summary judgment. Carubia swore that she has been employed by Estée Lauder for twenty-eight years and held many positions there, most of which were in its Human Resources Department.  Aff. Carubia at ¶ 3.   In addition, nothing in the record demonstrates that she is incompetent to testify on the matters stated in her affidavit or that her testimony would be disallowed by a court.  Nor is there any evidence that plaintiff attempted to depose Carubia despite having raised the issue with Magistrate Judge Michael Orenstein.  *See* Dec. Chase, Exh. H, Tr. Ct. Conf. August 6, 2010 10:23-11:25. Accordingly, Carubia's affidavit is deemed reliable and relevant for the purposes of this motion.

reporting to Al Creft, Senior Vice President of Human Resources and Global Operations for

Estée Lauder.  Aff. Carubia at ¶ 5.  Carubia avers that she did not draft, prepare, assist in

preparing or initial the Previte Memo.  *Id.* at ¶ 7.  When she was presented with the memo in

March 2010 by Estée Lauder's counsel, it was the first time she saw it or any information

concerning Russo's claim for LTD benefits.  *Id.* at ¶ 8.

Upon her review of the 2004 Previte Memo, Carubia noticed several errors and items that

were inconsistent with her practices as of the date of the memo as well as Estée Lauder's

practices for such documents.  First, Carubia noted that the memo was drafted on the Company's

"Estée Lauder, Inc." letterhead.  It was never Carubia's practice to use Estée Lauder, Inc.

letterhead for interoffice memoranda.  *Id.* at ¶ 9.

Next, Carubia noted that the initials next to Previte's typed name were not signed in her

handwriting.  With respect to the "JC" initials, Carubia claims that she signs her initials in a

lowercase "j" and "c," written very closely together, unlike those in the memo.  Carubia also

swore that she never circles her initials when she places them on a document and that she did not

initial the Previte Memo.  *Id.* at ¶ 10.

Third, the memo "Re:" line contains sensitive personal information which Carubia has

never seen in a "Re:" line in an Estée Lauder memorandum.  As a practice, employees working

in Human Resources do not include information such as social security numbers in memoranda

to a file.  *Id.* at ¶ 11.  Fourth, as of the date of the memo, March 10, 2004, Carubia was no longer

reporting to Previte because he had already transitioned to his training position.  *Id.* at ¶ 12.

Finally, Carubia noted that the memo contains two typos that she would have corrected

prior to finalizing.  She would have capitalized the "T" in the word "term" in the phrase "Long

term Disability Claim" in the third line of the body of the memo.  Additionally, Carubia would have capitalized the "C" in "corporate HR," also in the third line of memo.

A comparison of memoranda from Estée Lauder to Russo and other employees bears out Carubia's claim that letterhead containing "Estée Lauder Inc." was not used for interoffice memoranda.  All seven interoffice and employer-employee documents submitted by plaintiff are on "Estée Lauder Companies" letterhead.  The Previte Memo is on "Estée Lauder, Inc." letterhead.  *See* Dec. Mesidor, Exh. E; Aff. Carubia, Exh. 1.

Nor is the format in keeping with Estée Lauder's practices.  Carubia swore that human resource employees were instructed not to include sensitive personal information on memoranda. The Previte Memo contains Russo's redacted social security number.  It is also apparent to the naked eye that the font size used in the Previte Memo is markedly smaller than the font sizes on the comparison documents.  Furthermore, the formatting and spacing in the bodies of the memoranda in the comparison documents are obviously dissimilar to the format and spacing of the single paragraph in the Previte Memo.

Another indicator of the unreliability of the memo is the fact that Previte had not been the Human Resource Generalist for the approximately two and one half months prior to the date the memo was purportedly written, as demonstrated by the uncontested testimony of both Previte and Carubia.  Carubia also swore that she began reporting to Al Creft, Senior Vice President of Human Resources and Global Operations for Estée Lauder, after Previte left his position in late December 2003 or early January 2004.  It is simply not credible that she authored the memo on behalf of Previte more than two months after he went to the trainer position.         Russo testified that he did not believe he asked anyone at Estée Lauder for a document with the contents of the

Previte Memo, yet he was not at all surprised to receive the document.  Dec. Chase, Exh. I, Tr.

Russo 352:19-353:8.  Nor did he have any reaction to the memo after reading it.  *Id.* at 352:3-9.

To believe that the document was authentic, then, a fact finder would have to find that the memo,

addressed to the file, not Russo, appeared "out of the blue" from an unknown sender some five

years and nine months after it was purportedly written and that Russo had no reaction to its

content despite the fact that it essentially proves his case.  The fact finder would also have to

ignore credible evidence of Estée Lauder's practices with regard to interoffice memoranda and

the fact that the purported author of the document left his human resource position two and one

half months before the document was allegedly written.

Hornbook law, however, requires the proponent of an item to prove its authenticity.  This

plaintiff has not done.  Accordingly, defendants' motion to strike the Previte Memo is hereby

granted and it is deemed stricken from the record in this case.

### 2.  The 2005 Aetna Form

In opposing defendants' motion for summary judgment, plaintiff also submits a form

purporting to be an Aetna Group Disability Form dated May 2, 2005 ("Aetna form")

accompanied by a letter dated March 22, 2005 from plaintiff to Estée Lauder employee Al Creft.

Dec. Mesidor, Exh. U.  Defendants contend that the document is inadmissible because it was

never presented to any witness for identification, nor is it attached to the appropriate affidavit.

Defendants also argue that plaintiff never deposed the supposed author of the document,

Stephanie Staples, or any witness, as to the document's origin, relevance or purpose.

In addition, Estée Lauder complains that plaintiff's factual assertions relating to the

Aetna form are not supported by the record because there is no evidence that it directed Staples

or anyone else to complete the Aetna form or that the form relates to plaintiff's LTD benefits in any way.

Plaintiff's memorandum in opposition to defendants' motion for summary judgment asserts that "in May 2005, pursuant to the Settlement Agreement and Insert, [Estée Lauder] had employee, Stephanie Staples, complete the employer section of Aetna's Group Disability Form, noting the Effective Date of insurance as "January 31, 2004" and a last day worked . . . ." As defendants correctly note, however, their version of the form identifies February 13, 2003 as the last date worked and identifies January 31, 2004 as the "Effective Date Insurance Discontinued if Not in Force." Dec. Chase, Exh. K at EL00122.

In opposition to Estée Lauder's motion to strike, plaintiff argues that in his affidavit dated February 7, 2011, he authenticated the Aetna form by identifying it as the document he received via facsimile from Estée Lauder's Corporate Human Resources Department. To support this contention, plaintiff's counsel attaches a copy of the Aetna form to her declaration in opposition to the instant motion which contains facsimile transmission markings dated June 2005 seemingly originating from Estée Lauder's corporate HR. Dec. Mesidor, Exh. D.

Plaintiff's exhibit D, however, proves nothing except that Estée Lauder sent an Aetna disability form to someone by facsimile from corporate HR sometime in June 2005.[5] It does not prove: (a) that Stephanie Staples authored the employer section of the document; (b) that the content is accurate; (c) that the form was written on at all when it was received; (d) that the last date worked was February 13, 2003; or (e) that the "Effective Date" of insurance was January

---

5. The exact date appears to be June 8, 2005, but none of the copies contains a completely legible date.

31, 2004.  In other words, mere receipt of a document by facsimile proves nothing about the document's contents or its author.

Moreover, the circumstances surrounding the inclusion of the document as an exhibit in plaintiff's papers are irregular.  In plaintiff's counsel's declaration submitted in opposition to defendants' motion for summary judgment, it states that exhibit U contains "a true and accurate copy of [a] letter dated March 22, 2005 from Daniel T. Russo to Mr. Al Creft, regarding Aetna's Group Disability Form which requires completion by an Estée Lauder representative."  Dec. Mesidor at ¶ 22.

Said letter from Russo to Cleft in the declaration advises Cleft that section four of the Aetna disability form must be completed by an Estée Lauder representative.  *Id.* at Exh. U, Bates No. EL00121.  In addition, Russo's letter requests that Cleft pass on the form to the proper person.  The letter also states the following: "It is ok for her to complete over the x mark in this section" in reference to a handwritten "X" over section four of the Aetna form.  The document is signed by Russo and bears a stamp that reads: Received March 28, 2005, Human Resources.  It also contains a label which identifies the document as an exhibit and which reads: Parker 21, 3-1-10 followed by the capital initials "SF" or "JF."  *Id.*

Meanwhile, on the second page of plaintiff's exhibit U, the Aetna form, there is no Bates number.  *Compare id.* at Bates No. EL00121, and *id.* at p. 2 (no Bates number).  Nor is there an "X" over section four as stated in Russo's letter.  *Id.* at p.2.  The section to be filled out by the employee is blank.  Section four, however, appears to have been completed by Stephanie Staples and contains the information described above, i.e., it lists plaintiff's "Date Last Worked" as "2/13/03" and identifies the "Effective Date Insurance Discontinued if Not in Force" as

"1/31/04."  *Id.* at p. 2.

On the other hand, defendants' second page of the same exhibit differs in that it: contains Bates number EL00122 which is sequential to Russo's letter's Bates number; has employee sections one through three completed and signed by plaintiff; has an "X" over section four as discussed in the letter; and contains a handwritten note in the margin to the left of section four which says "TO BE completed BY Employer."  Dec. Chase, Exh. K, Bates No. EL00122. Furthermore, defendants' version of section four is empty and unsigned by Stephanie Staples or anyone else for that matter.  Thus, defendants' version of the Aetna form coincides with the instructions and requests in the attached Russo letter.

In addition, when plaintiff's Aetna form is compared with the Bates numbered Aetna form submitted by defendants, it is clear by the font size that someone enlarged the font size in the unnumbered version and, as a result, a portion of the left margin is missing.

Finally, the document does not support the proposition for which plaintiff offers it, that is, the Aetna form does not note an "Effective Date of insurance" as January 31, 2004.  Dec. Chase, Exh. D at p. 2.  Rather, the form identifies that date as the "Effective Date Insurance Discontinued if Not in Force."  *Id.* at Exh. K, Bates No. EL00122.  Plaintiff will not, therefore, be prejudiced by its exclusion.

For all of the foregoing reasons and the fact that no explanation was given for the discrepancies between the different versions of the form, plaintiff has neither authenticated the contents of the document or demonstrated its relevance.  Accordingly, defendants' motion to strike the unauthenticated 2005 Aetna form with no Bates number is hereby granted and it is deemed stricken from the record.

-16-

Defendants' motion to strike portions of plaintiff's 56.1(b) statement is hereby granted in part and denied in part.  Defendants' motion to strike the Previte Memorandum and the 2005 Aetna Form is hereby granted.

## II.     Estée Lauder's Motion for Sanctions

### A.     Legal Standard

In pertinent part, FRCP 11(b)(3) & (4) provides that by signing, filing, submitting or later advocating a pleading, written motion or other paper to the court, an attorney certifies that to the best of his or her knowledge, information and belief, "the factual contentions have evidentiary support" and the "denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Federal Rule of Civil Procedure 11(c)(1) provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violates the rule or is responsible for the violation."  "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. Pro. 11(c)(2).  Furthermore, a "sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  *Id.* at 11(c)(4).  These include nonmonetary directives; monetary penalties; or, "if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  *Id.*

Whether or not to impose sanctions is within the district court's discretion.  *Schottenstein v. Schottenstein*, 230 F.R.D. 355, 360 (S.D.N.Y. 2005). "In considering whether to impose

-17-

sanctions based on the lack of evidentiary support for an attorney's factual contentions, the district court must direct its inquiry at ascertaining the attorney's knowledge and conduct at the time the pleading in question was signed." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 88 (2d Cir. 1998) (citing *Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 625 (2d Cir. 1991)).

"When determining whether a Rule 11 violation has occurred, courts should use an objective standard of reasonableness.*" Colliton v. Donnelly*, No. 07 Civ. 1922, 2009 WL 812260, at *1 (S.D.N.Y. Mar. 27, 2009) (citing *Simon DeBartolo Group, L.P. v. Richards E. Jacobs Group, Inc*., 186 F.3d 157, 166 (2d Cir. 1999)). *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003) (" '[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness,' *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000), and is not based on the subjective beliefs of the person making the statement.").

### B.    Defendants' Motion

Estée Lauder argues that sanctions are warranted against plaintiff and his counsel because their papers contain factual statements and offer documentary submissions as evidence which a reasonable  inquiry would have shown are factually inaccurate or inadmissible.[6]

In opposition, plaintiff's counsel argues that she highlighted a number of disputed issues of material fact and provided sufficient evidence to defeat summary judgment.  Plaintiff also relies on FRCP 11(d), which provides that Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37," for the proposition that

---

6.  The Court limits its sanctions determination to plaintiff's production of the Previte Memo and the 2005 Aetna Form.  Even assuming, *arguendo*, that some portions of plaintiff's Local Rule 56.1(b) statement improperly opposed defendants' Local Rule 56.1(a), the Court, having undertaken a comprehensive review of the record, found no instances warranting sanctions.

defendants improperly filed their motion for sanctions which concerns documents exchanged during discovery.[7]

      In July 2010 and pursuant to FRCP 37(a), defendants' counsel advised plaintiff's counsel in writing about the suspicious nature of the Previte Memo, including her concerns about its authenticity.  Estée Lauder's counsel also raised her concerns with Magistrate Judge Michael Orenstein by a Rule 37(a) motion for discovery sanctions.  DE 67.

      On August 6, 2010, after both parties briefed their positions regarding the Previte Memo, the parties appeared before Magistrate Judge Orenstein.  During the conference, Magistrate Judge Orenstein stated the following with regard to the memo: (1) that, as a copy, it "may not meet any authentication requirement"; (2) that the document "may not be admissible ever"; (3) that there "may be other ways that these documents can never be used substantively in this case"; and (4) that the "documents have problems."  Dec. Chase, Exh. H, Tr. Ct. Conf. August 6, 2010 6:24-25; 9:18; 12:11-13; 13:24.  After plaintiff's counsel advised the court that "we maintain our position that the documents have been properly authenticated," Magistrate Judge Orenstein responded: "I don't know how you can take that position."  *Id.* at 13:11-16.

      Also during that conference, however, Magistrate Judge Orenstein advised that he did "not need to go into whether or not I need to preclude, suppress, whatever you call it at this time, because that issue may become very clear on a motion for summary judgment or, if summary judgment is not granted, then at a trial, and certainly subject to a motion in limine."  *Id.* at 12:13-18.  At the end of the conference, Magistrate Judge Orenstein noted that what "would be

---

7.  Plaintiff's submission of the documents in opposition to Estée Lauder's motion for summary judgment to the Court removes them from the Rule 11(d) exchanged for discovery category and thus, that argument will not be considered.

presented to Judge Platt is not a discovery issue" but was "simply . . . whether or not the document . . . may be used either on a motion–for a motion for summary judgment, because a judge is limited to admissible evidence on a motion for summary judgment." *Id.* at 20:7-14

Given Magistrate Orenstein's guidance, then, plaintiff's counsel apparently contemplated that if, as and when an application was made, this Court would determine the admissibility of the Previte Memo, which is, ultimately, what occurred.

With regard to the substituted 2005 Aetna Form, there is simply no evidence in the record which proves that its inclusion was done with an improper purpose. First, plaintiff's counsel submitted the now stricken Aetna form at least twice, i.e., in her declaration opposing defendants' motion for summary judgment and in her declaration opposing defendants' motion to strike. Both times, but for different purposes, she submitted the same version of the form, that is, the version in which the employer section was filled out. Given, also, the voluminous record in this case and the myriad amount of documentary evidence, it appears to the undersigned that the submission of this particular version of the form twice amounts to a law firm error more so than an attempt to intentionally mislead the Court. When determining whether sanctions are appropriate, "all doubts must be resolved in favor of the signer of the pleading." *Schottenstein*, 230 F.R.D. at 359 (citing *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993)).

On its own, the preclusion of evidence is a "harsh sanction[] that should be reserved for extreme cases." *Almonte v. Coca-Cola Bottling Co. of New York, Inc.*, 169 F.R.D. 246, 249 (D. Conn. 1996) (citing *Cine Forty-Second St. Theater Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)). Thus, while the Court agrees there are problems with plaintiff's use of a document that has not and seemingly cannot be authenticated and use of a

-20-

form which differs from the form previously entered into evidence, the striking of the two

documents from the record provides defendants with a suitable remedy.  Furthermore, the Court

trusts that plaintiff's attorneys will continue to represent zealously their clients, but will take

better care when submitting documentary evidence to the Court.

For the foregoing reasons, defendants' motion for sanctions is hereby denied.

**III.    Estée Lauder's Motion for Summary Judgment**

    **A.    Background**

        **1.    Plaintiff's Employment History with Estée Lauder**

In July 1997, defendants ("Estée Lauder") hired plaintiff Daniel Russo ("Russo")

as a corporate credit manager in the finance department in the company's Melville Facility.  Def.

56.1 Stmt. ¶ 1.  Approximately two years later, Russo informed Estée Lauder that he had been

diagnosed with cancer.  *Id.* at ¶ 2.  With the exception of some leaves taken for surgeries or

treatment related to his cancer, Russo routinely worked more than forty hours throughout his

employment.  *Id.* at ¶ 3.  In January 2003, Estée Lauder advised Russo that it was terminating his

employment effective January 9, 2003.  *Id.* at ¶ 4.  After that date, Russo did not report to Estée

Lauder's offices.  *Id.* at ¶ 5.  Plaintiff complains that he was wrongfully terminated in retaliation

for testifying against Estée Lauder in a separate discrimination case.

        **2.    The Parties' Settlement Agreement and Insert**

In or about June 2003, Russo and two other current and former Estée Lauder employees

filed the 2003 action, which involved allegations of employment discrimination and retaliation

against Estée Lauder.  *Id.* at ¶ 6.  After mediation, the parties settled.  *Id.* at ¶ 7.  On October 1,

2003,[8] the parties executed a confidential Settlement Agreement and General Release

("Settlement Agreement").  *Id.* at ¶ 8.  Subsequently, the parties negotiated an amendment to the

Settlement Agreement with the assistance of counsel.  *Id.* at ¶ 9.  The parties memorialized the

amendment in an Insert to the Settlement Agreement ("Insert") which was executed on January

9, 2004 (collectively referred to herein as the "Agreement").  *Id.* at ¶ 10.

Pursuant to the terms of the Agreement, Estée Lauder agreed to provide Russo with a

series of settlement payments, as well as continued participation in group medical (health, dental

and prescription) benefits for Russo and his dependents.  The "Extended Coverage Period" was

due to begin on February 1, 2004 and end on the earliest of Russo's sixty-fifth birthday, his

death or on any date that such continued coverage became unlawful.  *Id.* at ¶ 11.  The Agreement

also provides that:

> Estée Lauder hereby agrees and acknowledges that nothing contained in the
> Settlement Agreement and/or this Insert shall affect any entitlement Russo may
> currently possess or would otherwise have in the absence of this Settlement
> Agreement and/or this Insert to his pension, retirement plan, stock options, life
> insurance conversion, his claim for Long Term Disability with CNA Insurance
> Company, and its successors, or other benefits that would be available to him in
> the absence of this Settlement Agreement or Insert.  Russo hereby agrees that this
> Settlement Agreement and/or this Insert are not intended to create any new or
> additional entitlements from the date of execution of this Insert, except as set
> forth in the Settlement Agreement or this Insert.

*Id.* at ¶ 12.  In exchange for compensation and benefits, Russo agreed to waive "any and all

actions, causes of action, claims, demands, damages, rights, remedies and liabilities of

whatsoever kind or character, in law or equity, suspected or unsuspected, past or present," that

---

8.  Although defendants' 56.1 statement gives the date as October 1, 2003, the signatories identify the date as
October 11, 2003.  *See* Dec. Mesidor, Exh. A at EL00134.  Thus, the Court shall presume that the October 1, 2003
date is a typographical error.

he had "from the beginning of time to the Effective Date." *Id.* at ¶ 13.  The Agreement defines

the effective date as "the date of actual receipt by Estée Lauder's counsel" of documents related

to the discontinuance of the 2003 action.  *Id.* at ¶ 15.  Russo also agreed not to lodge any

complaints arising out of or relating to any of the claims released under the Agreement.  *Id.* at ¶

14.

> Paragraph 8(a) of the Agreement contains an express integration clause, which states:

>> This Agreement contains the entire agreement between the Parties and supersedes
>> any and all prior agreements, arrangements, negotiations, discussions or
>> understandings between the Parties relating to the subject matter hereof.  No oral
>> understanding, statements, promises or inducements contrary to the terms of this
>> Agreement exist.  This Agreement cannot be changed or terminated orally. . . .

*Id.* at ¶ 16.  The Agreement does not contain a single reference to the date February 29, 2004

with respect to the LTD Plan coverage, termination date, severance date, last day worked or

status as an active employee.  *Id.* at ¶ 17.  Plaintiff testified that the insert to the Settlement

Agreement is unambiguous and sets forth the terms of the parties' agreement, which, according

to plaintiff, obligated Estée Lauder to treat him as an active employee through February 29, 2004

for the purposes of the LTD plan.  *Id.* at ¶ 18; Plt. 56.1 Ctr. Stmt. ¶ 18.

### 3.     Plaintiff's Long Term Disability Claim Under the Plan

#### a.     *CNA's Long Term Disability Plan*

In 2003, Estée Lauder offered a long term disability ("LTD") plan to eligible employees

through a LTD disability plan provided by CNA.  Def. 56.1 Stmt. ¶ 19.  The terms of the plan are

set forth in an insurance policy issued by CNA and are spelled out in a summary plan description

provided to Estée Lauder employees.  *Id.* at ¶ 20.  Under the express terms of the plan, CNA has

the sole discretion and authority to consider and make all determinations with respect to claims for LTD benefits pursuant to the plan. *Id.* at ¶ 21. Estée Lauder does not have any decision making authority on claims, nor any ability to modify the terms of the plan for the benefit of one participant. *Id*. at ¶ 22.

Under the terms of the plan, individuals are eligible to participate if they are active, regular, full-time Estée Lauder employees working at least thirty hours per week. *Id.* at ¶ 23. Also pursuant to the plan, eligibility ends on the date when the employee physically stops working at least thirty hours per week for the company; that date is known as the last day worked ("LDW"). *Id*. at ¶ 24. If CNA determines that an employee was an eligible participant because the employee actively worked thirty hours per week as of the date of the claim, then CNA assesses whether the employee is functionally "disabled." *Id*. at ¶ 25. A finding that a claimant is disabled requires a showing that the claimant is continually unable to perform the substantial and material duties of their own occupation. *Id*. at ¶ 26. In order to be awarded benefits, an employee must be an eligible participant and disabled prior to his LDW. *Id*. at ¶ 27.

### b.    *Initial Review of Plaintiff's Claim for LTD Benefits*

In June 2003, Russo filed a claim for benefits under the plan in connection with his cancer diagnosis. *Id*. at ¶ 28. On or about June 4, 2003, CNA opened a claim file known as the administrative record for Russo's claim. *Id*. at ¶ 29. On that date, CNA received the employer's statement identifying January 9, 2003 as Russo's LDW. *Id*. at ¶ 30.

Thereafter, CNA resolution management specialist Tonya Williams ("Williams") reviewed the claim. *Id*. at ¶ 31. On or about June 16, 2003, Williams contacted Estée Lauder to clarify Russo's job duties and his hiring and termination dates. *Id.* at ¶ 32. On or about July 8,

-24-

2003, Williams conducted and documented an interview with Russo concerning his claim.  *Id.* at

¶ 33.  During the telephone interview, Russo advised  Williams that his LDW was January 9,

2003.  *Id.* at ¶ 34.

On August 18, 2003, Dr. Margaret Kemeny ("Kemeny"), Russo's treating physician,

returned a completed form to CNA certifying Russo's date of disability as July 30, 2003, i.e., six

months after the day he last worked.  *Id.* at ¶ 35.

### c.        CNA Denies Plaintiff's Claim for Benefits

On September 12, 2003, Williams forwarded a claims determination letter to Russo

which advised him that CNA had denied his claim for benefits ("determination letter").  *Id*. at ¶

36.  CNA determined that his LDW preceded the date on which his doctor determined that his

disability began.  The determination letter also advised Russo of his right to appeal CNA's denial

of his claim.  *Id.* at ¶ 37.

### d.        Plaintiff's Appeal of CNA's Determination

Represented by Binder & Binder, Russo appealed CNA's initial determination.  *Id*. at ¶

38.  Throughout the appeals process, Russo communicated with multiple CNA representatives

about his claim and provided additional medical documentation.  *Id*. at ¶ 39.  CNA representative

Cheryl Sauerhoff testified that during the appeals process, plaintiff argued that he was disabled,

as that term is defined under Estée Lauder's LTD plan, prior to January 9, 2003 and he continued

to make that argument throughout the appeals process.  Dec. Mesidor, Exh. D., Tr. Sauerhoff

60:6-16.  She also testified that at the end of his appeal, plaintiff advised CNA that he had

submitted several pay stubs proving his salary and deductions for LTD benefits beyond January

9, 2003.  *Id.* at 60:20-24.  Sauerhoff further testified that plaintiff never submitted any medical

information supporting his claim that he was unable to continue working full-time prior to his termination date. *Id.* at 64:7-18. Nor did he provide any information to CNA indicating that his last day worked was anything other than January 9, 2003. *Id.* at 67:20-23.

On November 18, 2003, CNA advised Russo in writing that his appeal was denied ("appeal determination letter"). Def. 56.1 Stmt. ¶ 41. The appeals determination letter advised Russo of the exact policy provisions and information relied upon by CNA in making its determination. Specifically, CNA advised Russo that the claim denial was upheld because: (1) his doctor certified his date of total disability as July 20, 2003 which was subsequent to his LDW date of January 9, 2003, i.e., the date on which he ceased being an eligible plan participant; and (2) the medical information provided by Russo and his doctors did not support a claim of total disability prior to his LDW, especially considering that he worked on a full-time basis until his termination date of January 9, 2003. *Id.* at ¶ 42. CNA found that although Russo provided information showing "the presence of a condition and treatment for such condition," he did not show the required "loss of functionality," such that he was "unable to perform [his] job due to medical conditions." *Id.* at ¶ 43. The appeals determination letter stated that the appeals process was complete, that all administrative remedies were exhausted and that the administrative record was closed. *Id.* at ¶ 44.

### 4.    2005 ERISA Litigation

Almost two years after receiving the appeals determination, on June 20, 2005 Russo filed an Employment Retirement Income Security Act ("ERISA") action against CNA and various Estée Lauder benefit plans. In the ERISA action, Russo challenged CNA's denial of his claim for LTD benefits. *Id.* at ¶ 45. Russo alleged that the Agreement provided for him to remain an

active participant in the LTD plan through February 29, 2004.  *Id*. at ¶ 46.

During the course of the ERISA action, Russo's counsel requested that Estée Lauder send a letter to CNA stating that Russo's eligibility under the LTD plan extended through February 29, 2004 ("letter request").  *Id.* at ¶ 47.  Plaintiff's attorney notes that on March 2, 2004, Estée Lauder Benefits Department employee Latricia Parker wrote, in a term life insurance conversion form, which contains no information about LTD benefits, that plaintiff's employment or eligibility terminated "2-29-04 settlement in lieu of severance."  Dec. Williams, Exh. B, Russo Dep. at Exh. V.  Estée Lauder did not comply with the letter request.  Def. 56.1 Stmt. ¶ 49.

On April 11, 2006, Federal District Court Judge Harold Baer, Jr. issued a decision granting summary judgment dismissing all of Russo's claims in the ERISA action.  *Id*. at ¶ 50. Judge Baer held that CNA had the sole discretionary authority to determine Russo's eligibility for benefits pursuant to the LTD policy.  *Id*. at ¶ 51.  Judge Baer concluded that "[t]here was no evidence in the administrative record that supports plaintiff's claim that his benefits extended thru February 2004," that Russo's eligibility to participate in the LTD plan ended in January 2003, and that "even assuming that evidence exists demonstrating that plaintiff's coverage extended beyond January 2003, the plaintiff cannot show that CNA's denial of long-term disability benefits was arbitrary and capricious."  *Id*. at ¶ 52.  Russo appealed the decision to the Second Circuit Court of Appeals, which affirmed Judge Baer's decision.  *Id*. at ¶ 53.

### 5.   Russo Continues to Make His Letter Request

Following the decision in the ERISA action, Russo continued to pursue the letter request. *Id*. at ¶ 54.  In a November 2006 telephone call between Russo, his counsel and then associate counsel at Estée Lauder, Kathleen Jennings ("Jennings"), plaintiff and his attorney asked Estée

Lauder to agree to specific language stating that Russo was an active participant in the LTD plan until February 29, 2004.  *Id*. at ¶ 55.  By letter dated November 13, 2006, Brewington wrote to Jennings with proposed language referencing February 29, 2004 as the date that eligibility for the LTD plan ended and as the official date of severance and asking Jennings to inform him of the date's acceptability.  *Id.* at ¶ 56.  No one representing Estée Lauder ever responded to Brewington's November 13, 2006 letter, but Russo "assumed" that Estée Lauder was sending such a letter to CNA.  *Id.* at ¶ 57.

**6.     The Instant Litigation**

In or around March 2007 and after the Second Circuit Court of Appeals affirmed the decision of Judge Baer in Russo's 2005 ERISA action,  Russo filed a discrimination and retaliation charge against Estée Lauder with the New York State Division of Human Rights ("NYSDHR") relating to the denial of his claim for LTD benefits.  *Id*. at ¶ 59.  After obtaining a right to sue notice, Russo commenced the instant litigation.  *Id*. at ¶ 60.

**B.     Plaintiff's Amended Complaint**

By his amended complaint filed January 13, 2009, plaintiff alleges that Estée Lauder discriminated against him because of his disability by causing Russo's LTD benefits to be denied; retaliated against plaintiff because of his opposition to discriminatory practices in a prior federal complaint; and breached a contractual term in a duly executed settlement agreement. Specifically, Russo claims the following: (1) retaliation in violation of Title VII, 42 U.S.C. § 2000e; (2) retaliation in violation of Title I of the Americans With Disabilities Act; (3) violation of New York Executive Law § 296; and (4) breach of an express or implied term in the parties' contract due to defendants' failure to provide CNA information requested by CNA so it could

-28-

grant Russo LTD benefits.  Plaintiff also seeks a declaratory judgment that defendants' conduct

toward him was retaliatory and seeks such injunctive relief as this Court deems proper.

### C.    Legal Standard for Summary Judgment

A motion for summary judgment may not be granted unless a court determines that there

is "no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting FRCP

56(c)).  "Summary judgment may be granted if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  *Williams v. R.H. Donnelly Corp.*, 368 F.3d 123, 126 (2d Cir. 2004).  The court must

resolve all ambiguities and draw all inferences in favor of the non-moving party.  *Id.*; *Castle*

*Rock Entertainment, Inc. v. Carol Publishing Group*, 150 F.3d 132, 137 (2d Cir. 1998).  "A party

opposing a properly brought motion for summary judgment bears the burden of going beyond

the [specific] pleadings, and 'designating specific facts showing that there is a genuine issue for

trial.' "  *Amnesty America v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  If there is any evidence in the record from

which a reasonable inference may be drawn in favor of the non-moving party on a material issue

of fact, summary judgment is improper.  *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37

(2d Cir. 1994).

There is a "genuine" issue of fact only if the "evidence [presented] is such that a

reasonable jury could return a verdict for the nonmoving party."  *Giodano v. City of New York*,

274 F.3d 740, 746-47 (2d Cir. 2001).  Plaintiff's evidence may not amount to a

mischaracterization of facts because "attempts to twist the record do not create a genuine issue of material fact for a jury." *Kim v. Son*, No. 05 Civ. 1262, 2007 WL 1989473, at *6 (E.D.N.Y. July 9, 2007). Therefore, "where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." *Holz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir. 2001). Also, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Finally, Federal Rule of Civil Procedure 56(c) mandates that all facts under consideration in a motion for summary judgment be directly supported by proof in admissible form.

### D. Effect of Res Judicata

Defendants first argue that "the majority of Plaintiff's claims arise out of the identical facts underlying the ERISA Action and thus, must be barred." Mem. in Supp. at p. 12. They contend that plaintiff's complaint filed in the United States District Court, Southern District of New York before Judge Harold Baer, Jr., stated an ERISA violation and that in the instant case, plaintiff pleads the same facts couched as claims for breach of contract and retaliation. *Id.* at p. 13. Defendants argue that Russo had to sue Estée Lauder at the same time he sued CNA.

The doctrine of res judicata "applies to preclude later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *In re Teltronics Services, Inc.*, 762 F.2d 185, 190 (2d Cir. 1985) (citing *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)). The purpose of the doctrine is to bar "repetitious suits involving the same cause of action" once "a court of competent jurisdiction has entered a final judgment on the

merits." *Sunnen*, 333 U.S. at 597.  Application of the doctrine is the same under both New York

and federal law.  *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir.1997).

Here, however, defendants interpret the doctrine of res judicata as foreclosing litigation

between a party and a non-party from an earlier lawsuit because the operative facts from the first

case overlap with the facts giving rise to the case brought against a different party for different

claims.

Russo opted to sue the insurance company on the basis that CNA failed to properly

investigate the denial of his eligibility for LTD benefits.  Dec. Williams, Exh. T. ¶¶ 47-60.  After

CNA's motion for summary judgment was granted by Judge Baer, Russo filed a complaint with

the NYSDRH alleging that Estée Lauder refused to certify to the insurance company that

Russo's LTD benefits were extended to February 29, 2004, which was in retaliation for the

discrimination lawsuit filed against Estée Lauder in 2003 (the settlement of which led to the

Agreement at issue herein).  Dec. Mesidor, Exh. N.

Subsequently, the NYSDHR determined that probable cause existed to "believe that the

Respondent has engaged in or is engaging in the unlawful discriminatory practice complained

of."  *Id.* at Exh. O.  At Russo's counsel's request, the NYSDHR closed the file and issued a

notice of right to sue.  *Id.* at Exhs. P & Q.  Plaintiff then filed the instant suit against Estée

Lauder alleging that defendants discriminated and retaliated against plaintiff.  *Id.* at Exh. R.

The claims in the lawsuit against CNA, then, stem from similar yet different operative

facts and claims unrelated to those brought against Estée Lauder.  Furthermore, Russo was not

obligated to sue Estée Lauder at the time he sued CNA.  *See* Fed. R. Civ. Pro. 19(a) (requiring

joinder of necessary parties).  Had he prevailed in his lawsuit against CNA, it is possible he may

have foregone bringing his retaliation claim against Estée Lauder altogether.

Even the cases cited by defendants do not support their proposition, i.e., that Russo should have sued Estée Lauder at the same time he sued CNA.  *See Hennessy v. Cement & Concrete Worker's Union Local 17A*, 963 F. Supp. 334, 337 (S.D.N.Y. 1997) (second suit by the same plaintiff against the same defendant based on the same operative facts barred by res judicata); *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 114 (2d Cir. 2000) (affirming the district court's dismissal based on res judicata where plaintiff brought another suit against the same defendant for claims stemming from common facts); *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998) ("Res judicata bars litigation of any claim for relief that was available in a prior suit between the same parties or their privies, whether or not the claim was actually litigated.").

Nor is Estée Lauder's argument that it was in privity with CNA persuasive.  Reply Mem. at p. 4.  "Privity between two parties fulfills the doctrine's requirement of identity of parties; identity of parties encompasses all individuals whose interests were represented adequately in prior litigation by another with the authority of representation."  *G & T Terminal Packaging Co., Inc. v. Consolidated Rail Corp.*, 719 F.Supp. 153, 158 (S.D.N.Y. 1989) (citing *Expert Electronic Inc. v. Levine,* 554 F.2d 1227, 1233 (2d Cir.1977)) .

Estée Lauder argues that the "defendants in the ERISA action (various Estée Lauder benefit plans) and defendants in the present action (Estée Lauder) are privies for the purposes of this litigation, because Estée Lauder is the sponsor of the various benefit plans."  Reply Mem. at p. 4.  For this proposition, Estée Lauder cites to *Adams v. IMB Pers. Pension Plan*, 533 F. Supp. 2d 342, 344 (S.D.N.Y. 2008).  To the contrary, however, *Adams* held that the "proper defendants

-32-

in an ERISA action are the plan itself and the plan administrator, not the plan sponsor." *Id.* at

344 n.1.  CNA, as the plan administrator, did not and could not represent Estée Lauder's interests

in the 2005 ERISA suit and, consequently, Estée Lauder is not CNA's privy for the purposes of

the instant case.  Russo was not, therefore, required to allege his breach of contract or retaliation

claims when he sued CNA and those claims are not barred by res judicata.

### E.    ERISA Preemption and Plaintiff's State Law Claims

Defendants next argue that plaintiff's state law claims are preempted by ERISA because

the Act preempts state law claims that "relate to" employee benefit plans.  Where a plaintiff

seeks "to collect as a beneficiary under a . . . benefit policy, it clearly relates to an employee

benefit plan as defined in 29 U.S.C. § 1002(1), and thus . . . is preempted by ERISA pursuant to

29 U.S.C. § 1144(a)." *Howard v. National Educ. Ass'n of New York*, 849 F. Supp. 12, 14

(N.D.N.Y. 1994).

This case, however, is not brought pursuant to ERISA.  Rather, Russo complains that

Estée Lauder discriminated against him because of his disability and retaliated against him for

bringing the 2003 action, from which the Settlement Agreement at issue stemmed and which led

to the instant breach of contract and New York Executive Law § 296 claims.  Furthermore, as set

forth above, the proper defendants in an "ERISA action are the plan itself and the plan

administrator." *Howard*, 849 F. Supp. at 14   Defendant is neither.  Plaintiff is not suing under

ERISA and the Act's preemptive effect is irrelevant to plaintiff's state law claims.

### F.    Plaintiff's Breach of Contract Claim

Pursuant to New York law, the elements of a breach of contract claim are "the existence

of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and

resulting damages." *Harris v. Seward Park Housing Corp.*, 913 N.Y.S.2d 161, 162 (N.Y. App. Div. 2010). "The interpretation of a contract is a matter of law for the court." *1550 Fifth Ave. Bay Shore, LLC v. 1550 Fifth Ave., LLC*, 748 N.Y.S.2d 601, 603 (N.Y. App. Div. 2002). "Under New York law, . . . the Court must look first to the parties' written agreement to determine the parties' intent and limit its inquiry to the words of the agreement itself if the agreement sets forth the parties' intent clearly and unambiguously." *Sterling Drug, Inc. v. Bayer AG*, 792 F. Supp. 1357, 1365-66 (S.D.N.Y. 1992) (citing *Nicholas Laboratories Ltd. v. Almay, Inc.*, 900 F.2d 19, 20-21 (2d Cir. 1990)).

"Where the language of a contract is unambiguous, 'its interpretation is a matter of law and effect must be given to the intent of the parties as reflected by the express language of the agreement.' " *1550 Fifth Ave. Bay Shore, LLC, 748 N.Y.S.2d at 603* (quoting *Riley v. South Somers Development Corp.*, 644 N.Y.S.2d 784, 786 (N.Y. App. Div. 1996)). Whether a term in a contract is ambiguous is a question of law. *Walk-In Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987) (citing *Sutton v. East River Savings Bank*, 435 N.E.2d 1075, 1077 (N.Y. 1982)).

Defendants argue that plaintiff is unable to establish a breach of the Settlement Agreement because he cannot identify specific terms that defendants purportedly breached because no such terms exist. Defendants also argue that the Agreement does not contain a single reference to the February 29, 2004 date with respect to LTD plan coverage, termination date, severance date, last day worked or status as an active employee. Thus, a plain reading of the Agreement shows that the parties, through extensive negotiations by the parties' lawyers, did not agree to extend Russo's employment or his eligibility for LTD benefits to February 29, 2004.

-34-

In opposition, plaintiff contends that the Agreement is ambiguous because it does not contain an express termination date.[9]  Plaintiff argues that while the Insert expressly states that the extended coverage period for his medical and dental insurance and prescription benefits shall begin on February 1, 2004, no termination date is given.  Plaintiff contends, therefore, that parole evidence is admissible to ascertain the parties' intent.

" '[I]t is a court's task to enforce a clear and complete written agreement according to the plain meaning of its terms, without looking to extrinsic evidence to create ambiguities not present on the face of the document.' "  *New York City Off-Track Betting Corp. v. Safe Factory Outlet, Inc*., 809 N.Y.S.2d 70, 73 (N.Y. App. Div. 2006) (quoting *150 Broadway N.Y. Assoc., L.P. v. Bodner*, 784 N.Y.S.2d 63, 66 (N.Y. App. Div. 2004)).  *See Seiden Associates, Inc. v. ANC Holdings, Inc*., 959 F.2d 425, 428 (2d Cir. 1992) ("When the question is a contract's proper construction, summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity.").

On the other hand, where the provisions at issue "are reasonably or fairly susceptible of different interpretations or may have two or more different meanings," a contract is ambiguous. *Id.*  "However, mere assertion by a party that contract language means something other than what is clear when read in conjunction with the whole contract is not enough to create an ambiguity sufficient to raise a triable issue of fact."  *Id.* (citing *Ruttenberg v. Davidge Data Sys.*

---

9.  Plaintiff argues that central to the 2003 action against Estée Lauder was Russo's contention that his January 9, 2003 termination date was unlawful.  Russo and Estée Lauder, however, settled that case by entering into the Agreement, which also contains a general release.  The release, executed by Russo on October 11, 2003, "irrevocably and unconditionally release[s], waive[s] and forever discharge[s] Estée Lauder and each of the other Releasees from any and all actions, causes of action, claims, demands, damages, rights, remedies and liabilities" from "the beginning of time to the Effective Date hereof ." Thus, Russo's contentions from that action have no bearing on this case.

*Corp.*, 626 N.Y.S.2d 174, 176 (N.Y. App. Div. 1995)).

      With respect to Russo's employee benefits, the Insert to the parties' Agreement provides:

> Russo and his currently eligible dependents ("Dependents") shall be entitled to continue to be covered under the Estée Lauder group medical, dental and prescription drug plan(s) in which he currently participates (United healthcare medical insurance [Select Plus POS], Met life dental insurance and Advanced PCS Prescription Plan) or successor plans, if any, that replace the current plans and cover a significant number of active employees (the "Estée Lauder Plan") upon the terms and conditions generally applicable to active employees for the "Extended Coverage Period." The "Extended Coverage Period" shall begin on February 1, 2004 and end on the earliest of (i) Russo's 65th birthday, (ii) Russo's death, or (iii) the date that such conditional coverage is unlawful or illegal under the terms of applicable local, state or federal law. . . .

Dec. Mesidor, Exh. A at EL00135. There is nothing ambiguous about this term. Estée Lauder is agreeing to provide an extended coverage period commencing February 1, 2004 and ending upon the happening of certain events. The agreed upon coverage and terms are clearly expressed.

      The Insert also provides that nothing contained in the Agreement:

> [S]hall affect any entitlement Russo may currently possess or would otherwise have in the absence of this Settlement Agreement and/or this Insert to his pension, retirement plan, stock options, life insurance conversion, his claim for Long Term Disability with CNA Insurance Company, and its successors or other benefits which would otherwise be available to him in the absence of this Settlement Agreement and/or this Insert. Russo hereby agrees that this Settlement Agreement and/or this Insert are not intended to create any new or additional entitlements from the date of execution of this Insert, except as set forth in the Settlement Agreement and/or this Insert.

*Id.* at EL00136.

      Looking at the contract as a whole, the Settlement portion of the Agreement sets out the settlement terms for all four of the plaintiffs from the 2003 action. The Insert, on the other hand, addresses only Russo's entitlement to employee benefits. It follows that language regarding his

entitlement to LTD benefits or extending his active employment date would be located in the Insert as well.  Instead, the only reference to LTD benefits is a paragraph stating that the Agreement will not impair Russo's entitlement to a "pension, retirement plan, stock options, life insurance conversion, his claim for Long Term Disability with the CNA Insurance Company, and it successors or other benefits." *Id.*  A plain interpretation of this language does not give plaintiff any more right to LTD benefits than he would have had without the Agreement.  Russo also agreed that the Insert was not intended to create any new or additional entitlements except those explicitly set forth in the prior paragraphs.

Furthermore, inclusion of the words "Long Term Disability with the CNA Insurance Company" demonstrates that there was at least a reference to those benefits during settlement negotiations and/or the drafting of the Agreement.  "Long Term Disability" only appears in the limiting paragraph on the second page of the Insert in contrast to the express list of agreed upon benefits on the first page.  It is also notable that the Agreement does not contain a single reference to February 29, 2004, the date Russo advocates with respect to the LTD Plan coverage, termination date, severance date, last day worked or Russo's status as an active employee.  As a matter of law, then, there is no ambiguity with respect to the benefits that Estée Lauder and Russo agreed to and no evidence that the parties contracted for Russo to receive LTD benefits.

Having determined that the contested terms of the contract are either definite or not contemplated by the Agreement at all, consideration of extrinsic evidence is unnecessary.  In any event, two of the three documents plaintiff proffered to prove that Estée Lauder intended or agreed to inform CNA that plaintiff's termination date was February 29, 2004, i.e., the Previte Memo and the 2005 Aetna Form, have been stricken from the record.  The third document,

correspondence from Estée Lauder's Director of Human Resources Latricia Parker, is irrelevant because it contains no information regarding LTD benefits.  Rather, the document pertains to the status of Russo's coverage under the Estée Lauder Companies Survivor Benefit Plan.  *See* Dec. Mesidor, Exh. F.

Moreover, the Agreement contains an Integration Clause which states that it "contains the entire agreement between the Parties."  Dec. Mesidor, Exh. A at EL 00131.  "When the contract as signed represents the complete and accurate understanding of the parties, parol evidence is inadmissible to vary or modify the terms of the writing."  *U. S. v. Wallace & Wallace Fuel Oil Co., Inc.*, 540 F. Supp. 419, 425 (S.D.N.Y. 1982) (citing *Battery Steamship Corp. v. Refineria Panama, S.A.*, 513 F.2d 735, 738 (2d Cir. 1975)).

For all of the foregoing reasons, plaintiff has not demonstrated that defendants breached their Agreement with him given that they were not obligated to notify CNA that plaintiff's LDW or termination date was February 29, 2004.  Defendants' motion for summary judgment on plaintiff's breach of contract claim is granted because he cannot prove that Estée Lauder breached a term in their Agreement.

### G.      Plaintiff's Retaliation Claims

#### 1.      Title VII

Title 42 U.S.C. § 2000e-3(a) ("Title VII") provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this subchapter."

"The *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792, 802 (1973)] burden shifting

analysis used in claims of discrimination in violation of Title VII also applies to retaliation

claims brought pursuant to Title VII." *Terry v. Ashcroft*, 336 F.3d 128, 140 (2d Cir. 2003). *See*

*Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (noting that allocation of

the burden of proof in retaliation cases follows the burden shifting approach enunciated in

*McDonnell Douglas*); *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (reciting burden

shifting approach in Title VII retaliation cases).

To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he

participated in an activity protected by Title VII; (2) the employer was aware of his participation

in the protected activity; (3) thereafter, his employer subjected him to a materially adverse

employment action; and (4) a causal connection exists between the protected activity and the

adverse employment action. *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).

*See, e.g.*, *Cifra,* 252 F.3d at 216; *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.

1998). "If the plaintiff meets this burden and the defendant then points to evidence of a

legitimate, nonretaliatory reason for the challenged employment decision, the plaintiff must

point to evidence that would be sufficient to permit a rational factfinder to conclude that the

employer's explanation is merely a pretext for impermissible retaliation." *Cifra*, 252 F.3d at

216. *See Richardson v. New York State Dept. of Correctional Service*, 180 F.3d 426, 443 (2d

Cir. 1999); *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir. 1998).

Defendants argue that summary judgment should be granted on plaintiff's retaliation

claim because he cannot establish that Estée Lauder's refusal to give CNA the February 29th

-39-

date amounted to a materially adverse employment action.  They argue that plaintiff did not fall within CNA's eligibility rules for LTD benefits, so it would not have made a difference if they gave CNA the requested date.  They also contend that Estée Lauder's unwillingness to provide the requested information had no materially adverse effect because plaintiff could not prove that he was actually disabled on his last date worked, i.e., January 9, 2003.

Turning to the first element of a Title VII retaliation claim, plaintiff participated in a protected activity by being part of an employment discrimination lawsuit brought in 2003 against Estée Lauder.  Second, Estée Lauder was aware of the suit and the identity of the plaintiffs, which included Russo, because it was a defendant.

With regard to the third prong, a plaintiff must demonstrate that he suffered a materially adverse employment action.  An adverse employment action is defined as a materially adverse change "in the terms and conditions of employment."  *Sanders v. New York City Human Resources Admin.,* 361 F.3d 749, 755 (2d Cir. 2004).  *See Richardson,* 180 F.3d at 446 ("[A] plaintiff may suffer an 'adverse employment action' if she endures a 'materially adverse change in the terms and conditions of employment.' ") (quoting *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997)).  A materially adverse change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Terry*, 336 F.3d at 138. "Examples of such a change include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.' " *Sanders*, 361 F.3d 755 (quoting *Terry*, 336 F.3d at 138).  "A plaintiff can demonstrate an adverse employment action by showing 'that a reasonable employee would have found the challenged

-40-

action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Stuart v. Peake*, No. 08-CV-1350, 2010 WL 3338913, at *5 (N.D.N.Y. August 24, 2010) (quoting *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006)).  The Supreme Court has held that anti-retaliation laws "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).

Plaintiff argues that the materially adverse effect of defendants' refusal to give CNA the February 2004 termination date would have dissuaded a reasonable employee from being part of a lawsuit against his or her employer.  He also argues that had Estée Lauder advised CNA that Russo's termination date was February 29, 2004, he would have been considered eligible for benefits given his disability certification dated July 30, 2003.  Plaintiff argues that Estée Lauder was bound to give the termination date and that there are issues of fact as to defendants' intent.

Individuals are eligible to participate in the CNA LTD plan if they are active, regular, full-time Estée Lauder employees working at least thirty hours per week.  Def. 56.1 Stmt. ¶ 23.  Eligibility ends on the date when the employee physically stops working at least thirty hours per week.  That date is known as the "last date worked." *Id.* at ¶ 24.

Once CNA establishes that an employee is eligible because he or she worked thirty hours per week at the time the claim was made, CNA's LTD plan then requires that an individual be functionally disabled as of his or her last date worked. *Id.* at ¶ 25.

Russo himself reported to CNA that his LDW was January 9, 2003. *Id.* at ¶ 34.  Estée Lauder also identified January 9, 2003 as Russo's LDW.  Plaintiff contends that Estée Lauder

then retaliated against him by refusing to tell CNA that he was "terminated" February 29, 2004, the date to which his coverage was extended pursuant to the Agreement with Estée Lauder.  That date encompasses the July 2003 date of disability.  To be eligible for LTD benefits, however, CNA requires individuals to be actively employed on the date they become disabled.  Plaintiff's last date of active employment was January 9, 2003 although he continued to receive paychecks until on or about February 13, 2003.  Dec. Williams, Exh. B, Dep. Russo at Exh. Z.  Thus, even if Estée Lauder reported his termination as February 29, 2004 to CNA, LTD benefits would still have been denied because no where in the record is there proof that plaintiff was actively working on July 30, 2003, his date of disability.

Moreover, nothing in the record supports plaintiff's claim that Estée Lauder was obligated to tell CNA that plaintiff's termination date was February 29, 2004.  The Previte Memo, which purportedly memorialized Estée Lauder's intention to extend Russo's LTD benefits, is stricken from the record in this case.  The 2005 Aetna form, purportedly authored by an Estée Lauder employee with, according to plaintiff, an effective date of insurance as January 31, 2004, has also been stricken from this record.  The other document that plaintiff proposes to use to establish that his benefits continued after his termination concerns life insurance conversion and says nothing about LTD benefits.  Estée Lauder was not obligated to give CNA the February 29, 2004 date.  Where no adverse employment action exists, a reasonable worker would not be dissuaded from making or supporting a charge of discrimination.

Given all of the foregoing, defendants' motion for summary judgment on plaintiff's Title VII claim is granted because plaintiff is unable to make a prima facie showing that Estée Lauder retaliated against him.

### 2.    Plaintiff's ADA Claim

Title 42 U.S.C. § 12203(a) prohibits retaliation and coercion under the ADA.  The

section provides:

> No person shall discriminate against any individual because such individual has
> opposed any act or practice made unlawful by this chapter or because such
> individual made a charge, testified, assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this chapter.

To establish a prima facie case of retaliation under the ADA, "a plaintiff must establish that (1)

the employee was engaged in an activity protected by the ADA, (2) the employer was aware of

that activity, (3) an employment action adverse to the plaintiff occurred and (4) there existed a

causal connection between the protected activity and adverse employment action."  *Parrella v.*

*Lawrence & Memorial Hosp.*, No. 08 Civ. 1445, 2009 WL 1279290, at *3 (D. Conn. May 5,

2009).

Retaliation and discrimination claims under the ADA and Title VII are analyzed "under

the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas*."

*Platt v. Incorporated Village of Southampton*, 391 Fed. App'x 62, 64 (2d Cir. 2010) (citing

*Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir.2001)).

Plaintiff's amended complaint alleges that he suffered an adverse employment action

when Estée Lauder retaliated against him by causing his LTD benefits to be denied because of

his disability.  Amend. Compl. ¶¶ 73-80.

It has already been determined that defendants were not obligated, contractually or

otherwise, to certify to CNA that Russo's termination date was February 29, 2004 and,

consequently, its refusal to do so was not an adverse employment action under Title VII.  The

same result is appropriate with respect to plaintiff's ADA retaliation claim.  Moreover, plaintiff

-43-

has not established that he was engaged in an activity protected by the ADA; that Estée Lauder was aware of that activity; or that Estée Lauder declined to notify CNA of the February date because of plaintiff's disability. Accordingly, defendants' motion for summary judgment on plaintiff's ADA retaliation claim is granted.

### 3.    Plaintiff's New York Executive Law § 296 Claim

Plaintiff's claim brought pursuant to New York's Executive Law § 296[10] is "governed by the same standards as [his] federal claim." *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993). "As the Supreme Court has noted, 'the elements of a successful employment discrimination claim' under Executive Law § 296 and Title VII are 'virtually identical,' such that a finding against a plaintiff on the state claim precludes a finding for the plaintiff on the federal claim. In light of New York's wholesale adoption of federal standards in discrimination cases under Executive Law § 296 claims, we find that the converse is also true." *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1048 (2d Cir. 1992) (quoting *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 479-80 (1982)); *see Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000); *Torres v. Pisano*, 116 F.3d 625, 629 n.6 (2d Cir. 1997); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 n.6 (2d Cir. 1996).

Given the Court's holding, *supra*, and its dismissal of plaintiff's Title VII claim, the same result is appropriate as to plaintiff's New York Executive Law § 296 claim. Accordingly,

---

10. New York Executive Law § 296(1)(a) makes it an unlawful discriminatory practice:

> For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

-44-

defendants' motion for summary judgment on this claim is also granted.

### H.    Conclusion

For all of the foregoing reasons, defendants' motion for summary judgment is hereby granted as to plaintiff's breach of contract, Title VII, ADA and New York Executive Law § 296 claims. Accordingly, plaintiff's Amended Complaint is hereby dismissed.  In light of the dismissal of plaintiff's amended complaint, he is not entitled to a declaratory judgment that defendants' conduct was retaliatory.

## IV.    Third-Party Defendants' Motion for Summary Judgment

Before the Court is third-party defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Third-party defendants, plaintiff Russo and his attorney Frederick K. Brewington ("Brewington"), seek judgment on third-party plaintiffs' third-party complaint and counterclaim, which allege that third-party defendants breached the Settlement Agreement that arose from the 2003 action.  For the following reasons, third-party defendants' motion is hereby denied.

### A.    Background

Third-party defendants premise their motion for summary judgment on their argument that Estée Lauder breached the Agreement by failing to advise CNA that Russo's termination date was February 29, 2004.[11]  Russo and Brewington also contend that Estée Lauder breached

---

11.  Third-party defendants also contend that third-party plaintiffs' complaint should be dismissed outright because they failed to plead all of the elements of a breach of contract claim in their third-party complaint.  Specifically, third-party defendants argue that third-party plaintiffs failed to plead their performance under the contract.  Had third-party defendants moved to dismiss the third-party complaint for failure to state a claim at the outset, their argument may have had a different result or the Court may have granted Estée Lauder leave to amend its third-party complaint.  Considering, however, that this case is at the summary judgment stage, that this is the first time plaintiff/third-party defendants raise this issue, along with the Court's holding, *supra*, that Estée Lauder did not breach the Agreement as well as there being no allegation that Estée Lauder failed to provide the benefits explicitly defined by the contract, third-party plaintiffs are deemed to have performed under the contract.

the Agreement's confidentiality provision by providing the Insert to the NYSDHR.  Therefore, third-party defendants argue, Estée Lauder cannot prove all the elements of its breach of contract claim against Russo and Brewington, i.e., that it performed under the terms of the Agreement.

Having already held, *supra*, that Estée Lauder was not obligated to provide CNA with the February 2004 date advocated by Russo, facts from the Local Rule 56.1 statements relevant to that determination are omitted.  The remaining facts are as follows.

On October 11, 2003, defendants and third-party plaintiffs, Estée Lauder ("third-party plaintiffs" or "Estée Lauder"), and plaintiff and third-party defendants, Daniel Russo and Frederick Brewington ("third-party defendants"), among others, signed a Settlement Agreement and General Release ("Agreement") related to a federal action captioned *Russo et al. v. Estée Lauder Corporation et al.*, 03-CV-3210.  TP Def. 56.1 Stmt. ¶ 1.  Upon the settlement of that matter, Estée Lauder did not move to seal the prior complaint, which is available to anyone with access to the PACER system.  *Id.* at ¶ 2.  In addition to the other terms and conditions in the Agreement, pursuant to paragraphs 6(a) and 7(a), third-party defendants agreed to give "to Estée Lauder immediate written notice" prior to any disclosure of the terms and conditions of the agreement.  *Id.* at 3.

Also pursuant to the terms of the Settlement Agreement, Estée Lauder agreed to provide Russo with continued participation for his medical coverage, i.e., group medical, dental and prescription drugs, up to and including the earlier of his 65th birthday his death or when continuation of those benefits became unlawful or illegal under local, state or federal law.  TP Plt. 56.1 Ctr. Stmt. ¶ 4; Dec. Mesidor, Exh. A at EL 00135.  In addition, the Insert provides that Russo's entitlement to his pension, retirement plan, stock options, life insurance conversion, his

-46-

claim for long-term disability ("LTD") with the CNA insurance company are not affected by the Settlement Agreement or its Insert.  TP Def. 56.1 Stmt. ¶ 5; Dec. Mesidor, Exh. A at EL 00136.

After unsuccessful requests to have Estée Lauder communicate Russo's allegedly extended disability date to CNA, Russo filed a retaliation charge against Estée Lauder with the NYSDHR on March 6, 2007.  TP Def. 56.1 Stmt. ¶ 24.  In Estée Lauder's position statement in opposition to the retaliation charge, it produced the Insert of the Settlement Agreement to the NYSDHR and some of the agreement's terms and conditions.  *Id.* at ¶ 25.  Estée Lauder admits that it produced the Insert to the NYSDHR subject to and limited by a footnote clearly stating that the "Settlement Agreement contains heavily-negotiated confidentiality provisions such that it was only provided to the district court in the ERISA action for in camera review.  Accordingly, as the only portions of the Settlement Agreement that are integral to the assessment of the instant Complaint are contained in the Insert, Respondent has appended only the Insert to this position statement."  TP Plt. 56.1 Ctr. Stmt. ¶ 25; Dec. Mesidor, Exh. M at p. 3 n.1.

Brewington and Russo contend that disclosure and inclusion of the Insert was a blatant violation of paragraph 6(g) of the terms agreed to by the parties.  TP Def. 56.1 Stmt. ¶ 26.  That paragraph states in pertinent part that "Estée Lauder agrees that it will make all reasonable efforts to hold the existence and negotiation of this Agreement and its terms and conditions in strictest confidence, consistent with its obligations under the law."  Dec. Mesidor, Exh A at EL 00130.  Estée Lauder contends that the provision does not preclude it from making a limited disclosure to a governmental agency in response to claims which allege that Estée Lauder breached the agreement.  Estée Lauder also notes that nothing in the agreement requires it to seek approval from Russo before such a disclosure, nor does it prohibit disclosure in all

circumstances.  Rather, the provision requires "reasonable efforts" by Estée Lauder to keep the Agreement confidential.  TP Plt. 56.1 Ctr. Stmt. ¶ 26.

On March 26, 2008, Brewington contacted Estée Lauder pursuant to paragraph 7(a) of the Settlement Agreement to advise Estée Lauder of the NYSDHR's request for a complete copy of the Agreement.  TP Def. 56.1 Stmt. ¶ 27.  On April 7, 2008, the NYSDHR made a probable cause finding that respondent Estée Lauder engaged in the discriminatory practice of retaliation against Russo.  *Id.* at ¶ 28.  On June 18, 2008, Brewington, on behalf of Russo, requested a Right to Sue letter from the EEOC along with an Administrative Dismissal from the NYSDHR on the discrimination charge.  *Id.* at ¶ 29.

On June 30, 2008, a Notice of Right to Sue letter, issued by the EEOC with regard to the charge, was mailed to Russo and was received on or about July 3, 2008.  *Id.* at ¶ 30.  On or about September 26, 2008, Brewington filed the instant action on behalf of Russo.  *Id.* at ¶ 31.  On or about January 14, 2009, Brewington filed an amended complaint on behalf of Russo.  *Id.* at ¶ 32.

On October 1, 2008, the <u>New York Post</u> published a story regarding the allegations in the 2003 action and September 26, 2008 complaint and quoted Brewington with respect to those allegations.  *Id.* at ¶ 33; TP Plt. 56.1 Ctr. Stmt. ¶ 33.  Third-party plaintiffs point out that the article expressly attributes specific quotes to Brewington, but does not contain a single reference to the September 26, 2008 complaint.  TP Plt. 56.1 Ctr. Stmt. ¶ 33.  They also note that Brewington testified that he believed that the conversation with the reporter took place in his law office's waiting room.  *Id.*; Dec. Mesidor, Exh. T, Tr. Brewington 32:2-11.  Given the foregoing, Estée Lauder contends that the article, written by someone who met with Brewington, creates a genuine issue of material fact as to whether or not Brewington made the numerous statements

attributed to him and provided the information which appears in the article.  *Id.*

Third-party defendants state that the seven sentence long article did not derive from any conversations that the writer had with Brewington or Russo and instead arose from the filed complaint.  TP Def. 56.1 Stmt. ¶ 34.  Estée Lauder notes its objections to the statement, argues that the article makes no reference to the September 26, 2008 complaint and contends that the source of the article's contents is a disputed issue of material fact.  TP Plt. 56.1 Ctr. Stmt. ¶ 34.

The October 1, 2008 New York Post article begins: "A Long Island cancer patient is suing cosmetics giant Estée Lauder for $6 million, claiming managers retaliated against him for a previous lawsuit he filed against them."  Third-party defendants contend that the information is derived from paragraphs nine, fifteen and fifty-one through ninety-four from the September 26, 2008 complaint.  TP Def. 56.1 Stmt. ¶ 35.  Estée Lauder points out that the article does not contain a single reference to the complaint, that Brewington admitted meeting with the reporter at his law office and, consequently, there is a material dispute of fact as to whether Brewington or the complaint provided the information in the article.  TP Plt. 56.1 Ctr. Stmt. ¶ 35.

The second sentence of the article states: "Dan Russo, 48, of Lake Grove, had previously sued Estée Lauder before reaching an out-of-court settlement in 2004, his lawyer said."  This information is contained in the complaint at paragraphs nine and twenty-eight through thirty-four.  TP Def. 56.1 Stmt. ¶ 36.  Estée Lauder contends that the article expressly attributes the quote to Brewington and does not contain a single reference to the complaint; nor does the article assert that "Mr. Russo alleges" or "the complaint alleges."  TP Plt. 56.1 Ctr. Stmt. ¶ 36.  In addition, the September 26, 2008 complaint does not indicate anywhere that the parties reached "an out-of-court settlement in 2004"; rather, the complaint is silent on the date or year of the

settlement.  *Id.*         Next, the article states: "[b]ut Russo claims the cosmetics powerhouse

broke a deal to cover his medical bills."  Third-party defendants contend that the statement

amounts to a conclusion derived from the contents of the entire complaint.  TP Def. 56.1 Stmt. ¶

37.  In addition to their other opposition, third-party plaintiffs note that the complaint does not

allege the it "broke a deal to cover his medical bills" or even that Russo had any unpaid medical

bills.  Rather, the complaint alleges that Estée Lauder did not honor its agreement to provide

Russo with LTD benefits.  TP Plt. 56.1 Ctr. Stmt. ¶ 37.

        The fourth sentence of the article states: "Now he's taking the company to court for

allegedly refusing to honor a written promise to certify that he was eligible for disability,

Russo's lawyer Fred Brewington said."  Third-party defendants claim that this information was

gleaned from paragraphs twenty-eight through thirty-four of the complaint.  TP Def. 56.1 Stmt. ¶

38.  Estée Lauder notes that the article expressly attributes the quote to Brewington and does not

contain a single reference to the complaint.  TP Plt. 56.1 Ctr. Stmt. ¶ 38.  Fifth, the article states:

"Russo, who works at Estée Lauder's Melville facility, claims he made a tape recording of a

supervisor saying the firm didn't promote him and later fired him because 'he was going to die

on them,' Brewington said."  Third-party defendants contend that this statement was derived

from paragraph sixteen of the complaint.  TP Def. 56.1 Stmt. ¶ 39.  Estée Lauder notes that the

article attributes the statement to Brewington, i.e., "Brewington said," and does not contain a

single reference to the complaint.  TP Plt. 56.1 Ctr. Stmt. ¶ 39.  Estée Lauder also notes that

paragraph sixteen of the complaint alleges that Russo allegedly was not promoted "because his

supervisors though 'he was going to die on them,' " but does not indicate that this information

was the subject of a tape recording.  *Id.*  Rather, the complaint's reference to a tape recording at

paragraph twenty-three, does not identify any specific statements allegedly recorded.  *Id.*

The following sentence in the article states: "Russo, who is white, joined with two other employees, both black, in an earlier racial discrimination lawsuit."  This information derives from paragraphs eighteen, twenty-five, twenty-six and twenty-eight.  TP Def. 56.1 Stmt. ¶ 40.  Estée Lauder contends, however, that the article did not arise from the complaint because it does not contain a single reference to the complaint, does not assert that "Mr. Russo alleges" or "the complaint states," repeatedly attributes its information directly to Brewington along with Brewington's admission that the reporter who wrote the article visited his law office.  TP Plt. 56.1 Ctr. Stmt. ¶ 40.  The last sentence of the October 1, 2008 New York Post article is not attributed to third-party defendants.  TP Def. 56.1 Stmt. ¶ 41.

On October 1, 2008, third-party defendant Brewington received a letter from Estée Lauder's counsel accusing third-party defendants of violating the terms of the Settlement Agreement.  *Id.* at ¶ 42.  On October 8, 2008, Brewington drafted a letter to Terri L. Chase, Esq. ("Chase"), outside counsel for Estée Lauder, denying any allegations that he or Russo violated the agreement, advising Estée Lauder of the continued public access to the previous complaint filed and referring Estée Lauder to paragraphs 6(a) and 6(b) of the agreement prohibiting disclosure of "matters relating to [the previous] litigation" only.  *Id.* at ¶ 43.  Nothing in the Settlement Agreement was intended to constitute a waiver of Russo's right to enforce terms and conditions contained therein.  *Id.* at ¶ 44.

Brewington, while under oath, denied making any statements regarding the Settlement Agreement or the prior lawsuit to reporter Crowley.  *Id.* at ¶ 45.  Yet, Brewington admitted to having a conversation at his law offices with Crowley in Fall 2008 about the instant litigation,

which sets forth claims relating to the agreement and the 2003 action.  TP Plt. 56.1 Ctr. Stmt. ¶

45.  Russo, also while under oath, denied making any statements regarding the Settlement

Agreement or the prior lawsuit to Crowley.  TP Def. 56.1 Stmt. ¶ 46.

Prior to the commencement of Brewington's deposition, he advised counsel for Estée

Lauder of their bad faith and made the following safe harbor statement on the record:

> As an attorney in this action, I am asserting from the beginning the
> attorney-client privilege and the work-product privilege for any questions
> which are applicable; and that I believe in this situation the deposition
> which is being taken as well as the underlying lawsuit that names me as a
> third-party defendant is frivolous.  Based on that, once we do commence
> this deposition, it is my view that our ability to settle this matter will be
> extremely difficult. I am now giving notice under the safe harbor
> requirement of Rule 11 that the taking of this deposition is subject also to
> any potential issues that may arise under the sanctioning authority of the
> Court.

TP Def. 56.1 Stmt. ¶ 47.

Discovery ended in this action on September 15, 2010 and Estée Lauder has proffered no

witnesses or documentary evidence, other than an internet print-out of the October 1, 2008 New

York Post article, as support for its allegation that third-party defendants violated the Settlement

Agreement.  TP Def. 56.1 Stmt. ¶ 48.  Estée Lauder argues that in addition to the admissible

news article which attributes its information directly to Brewington, the information contained

therein is not derived from the complaint and Brewington admitted to meeting with the writer in

person at his law firm in Fall 2008.  TP Plt. 56.1 Ctr. Stmt. ¶ 48.

On or about October 25, 2010, Chase, outside counsel for Estée Lauder, indicated in a

letter to Marjorie Mesidor, Esq., counsel to third-party defendants, that Estée Lauder "had

concluded that the Company has not obtained adequate admissible evidence to warrant continued

efforts to prosecute the counterclaim against plaintiff-third party defendant Daniel Russo for

breach of confidentiality and non-disclosure obligations under the Agreement." TP Def. 56.1 Stmt. ¶ 49. Chase also advised that Estée Lauder "will be withdrawing those portions of the claims set forth in paragraph 16 of the Third-Party Complaint that allege that Mr. Russo has breached his confidentiality and non-disclosure obligations under the Agreement." TP Plt. 56.1 Ctr. Stmt. ¶ 49. Attached to the October 25, 2010 letter was a proposed stipulation of discontinuance that, among other things, required that Russo indicate that the "claims in the present litigation arose subsequent to Mr. Russo's January 9, 2004 execution of the Agreement." TP Def. 56.1 Stmt. ¶ 50. Estée Lauder claims that in an effort to understand Russo's claims as they relate to paragraphs 5(a) and (b) of the agreement (the "release clauses") and to limit the scope of such claims to avoid any unnecessary prosecution of counterclaims, Chase proposed withdrawing Estée Lauder's claims against Russo related to the release clauses of the agreement if Russo provided Estée Lauder written clarification that his claims in the instant action arose after the January 2004 effective date of the agreement. TP Plt. 56.1 Ctr. Stmt. ¶ 50.

On November 2, 2010, third-party defendants' counsel Mesidor advised Chase of her continued obligation, as an officer of the court, "to only prosecute matters which, at the outset, have sufficient legal and evidentiary support to be reasonably considered by a trier of fact." TP Def. 56.1 Stmt. ¶ 51. Third-party defendants allege that to date, Estée Lauder has not withdrawn any of its counterclaims against wither third-party defendant. *Id.* at ¶ 52. Third-party plaintiffs point out that on November 17, 2010, in accordance with their October 25th notice to third-party defendants' counsel, Estée Lauder voluntarily submitted papers to effectuate its promised withdrawal of its counterclaim against Russo alleging breach of the confidentiality and non-disclosure obligations in the Agreement. TP Plt. 56.1 Ctr. Stmt. ¶ 52.

**B.      Third-Party Defendants' Motion for Summary Judgment**

Having set forth above the legal standard for summary judgment pursuant to FRCP 56, the Court turns to Russo's and Brewington's motion for summary judgment on Estée Lauder's counterclaim against Russo and third-party complaint against Brewington.

Estée Lauder's remaining counterclaim against Russo is for breach of the release clauses in the Settlement Agreement.  TP Compl. ¶ 15.  Third-party plaintiffs' claim against Brewington is for breach of the confidentiality and non-disclosure provisions in the Agreement.  *Id.* at ¶ 13. The elements of a breach of contract claim are also set forth above, to wit: (1) an agreement; (2) plaintiff's performance; (3) defendant's breach; and (4) damages.  With respect to third-party plaintiffs' remaining claims and third-party defendants' motion for judgment on those claims, the undersigned holds as follows.

**1.      Alleged Breach of the Release Clauses by Russo**

In support of their motion for judgment on Estée Lauder's breach of the release clauses, Russo argues that nothing in the Agreement forecloses him from bringing a retaliation claim against Estée Lauder.  He also alleges that defendants failed to perform by refusing to report the proper date of termination to CNA.  Furthermore, Russo contends that the date he executed the Agreement, October 11, 2003, is its effective date of the Agreement.  Thus, any claims that arose thereafter are not precluded under paragraph 5(a) or (b) of the Agreement.

Third-party plaintiffs oppose Russo's and Brewington's motion for summary judgment on breach of the release clause on the bases that the effective date of the Agreement is not October 11, 2003 and because Russo's amended complaint alleges adverse conduct covered by the release clause, i.e., circumstances surrounding his January 2003 termination and the use of

prior allegations to support his current ADA and New York Executive Law § 296 claims.

The release clause at paragraph 5(a) provides that Russo and the other plaintiffs from the 2003 lawsuit, "**irrevocably and unconditionally release, waive and forever discharge** Estée Lauder and each of the other Releasees from any and all actions, causes of action, claims, demands, damages, rights, remedies and liabilities . . . of whatsoever kind or character . . . including, but not limited to, claims arising out of or related to any of the Plaintiffs' employment and positions with Estée Lauder, from the beginning of time to the Effective Date hereof." Dec. Mesidor, Exh. A at EL00127 (emphasis in original).

Paragraph 5(b) provides that "Plaintiffs agree not to lodge any formal or informal complaint in court, with any federal, state or local agency or any other forum . . . arising out of or related to Plaintiffs' Claims. *Id.* at EL000128.

Pursuant to paragraph 9, the parties' Agreement, "shall become effective and enforceable automatically on the date of actual receipt by Estée Lauder's counsel, Kaye Scholer LLP . . . of: (a) the executed Certificates of Non-Revocation of Settlement Agreement and General Release . . . by all Plaintiffs; and (b) a copy of the withdrawal with prejudice of the Civil Action . . . executed by the Law Offices of Frederick K. Brewington (the Effective Date")." *Id.* at EL00132.

Russo executed the Agreement on October 11, 2003 and the Insert on January 9, 2004. Estée Lauder's representative executed both the Agreement and the Insert on January 12, 2004, presumably upon receipt of the executed Agreement from the plaintiffs in the 2003 lawsuit. On January 14, 2004, the undersigned So Ordered a Stipulation of Dismissal and Discontinuance of the 2003 case. Dec. Williams, Exh. F. Given the plain language of the Agreement's paragraph 9, the Effective Date of the Agreement turns on Estée Lauder's receipt of the executed

-55-

documents and evidence that the action was discontinued with prejudice previously executed by Brewington.  Relying on the Stipulation of Discontinuance and Dismissal then, the Effective Date of the Agreement is January 14, 2004.  Thus, the Agreement's Effective Date forecloses Russo from relying upon, in his amended complaint, conduct which occurred prior to January 14, 2004.

The Court has already held, *supra*, that Estée Lauder was not obligated, under the Agreement or otherwise, to inform CNA that Russo's termination date was February 29, 2004.  Thus, Estée Lauder's performance is not at issue in this breach of contract claim.

The Estée Lauder defendants cite numerous paragraphs from the amended complaint wherein Russo refers to conduct and makes claims that predate the Effective Date of the Agreement.  In example: (1) at paragraph 3, Russo alleges that Estée Lauder acted with the intention of depriving him of his right to be free from discrimination in employment although his employment terminated in January 2003; (2) at paragraphs 16 and 17, referring to his employment prior to his termination, Russo states that he "was subjected to discriminatory treatment based on his disability," including Estée Lauder's failure to repeatedly deny him a promotion and ultimately terminate him; (3) paragraphs 22 through 28 allege discrimination as the reason for Russo's January 9, 2003 termination; and (4) paragraph 70 discusses Estée Lauder's discrimination in failing to promote him.   Dec. Mesidor, Exh. R.

Russo has not demonstrated that he is entitled to judgment on defendants' counterclaim alleging that he breached the Agreement's release clauses.  Rather, his amended complaint contains references to conduct and claims which were released under the Agreement and which predate the effective date of the releases.  Furthermore, Russo's ADA claim, at first glance,

states a claim for an adverse employment action (because it was brought pursuant to Title I of the ADA) instead of a post termination retaliation claim, facts clearly precluded by the releases.[12] Similarly, his Title VII and New York Executive Law § 296 claims incorporate facts also precluded by the releases. Given the foregoing, his motion for summary judgment on defendants' breach of contract counterclaim is hereby denied. Summary judgment may not, however, be granted to defendants on their counterclaim because they have not established their damages, the amount and existence of which will be determined by a jury.

2. **Third-Party Complaint Alleging Breach of the Agreement's Confidentiality Provisions**

Third-party defendants move for summary judgment on third-party plaintiffs' claim that Brewington breached the confidentiality provisions of the Agreement. Brewington argues that Estée Lauder waived confidentiality when it reproduced the Insert to the NYSDHR and when it failed to apply to the Court to seal the 2003 complaint. Third-party defendants also argue that Estée Lauder's breach of contract claim is premised on a single New York Post article containing information gleaned from the original complaint filed in this action and possibly from the unsealed 2003 complaint, but not from Brewington. Third-party defendants also contend that Estée Lauder is unable to prove damages resulting from the purported breach of the Agreement.

Third-party defendants argue that third-party plaintiffs breached the non-disclosure portion of the Agreement by submitting the Insert to the NYSDHR in its position statement

---

11. Russo's amended complaint, Estée Lauder and Russo's counsel, in defendants' motion for summary judgment, treated the claim as one for retaliation under the ADA and, accordingly, the Court analyzed the claim under the rubric for retaliation.

opposing Russo's retaliatory discrimination charge.  Paragraph 6(g) of the Agreement provides

that "Estée Lauder agrees that it will make all reasonable efforts to hold the existence and

negotiation of this Agreement and its terms and conditions in strictest confidence, consistent

with its obligations under the law."  Dec. Mesidor, Exh. A at EL00130.

By its plain language, nothing in the above provision prevents Estée Lauder from

disclosing a limited and highly relevant portion of the Agreement to a governmental agency,

particularly when it was offered to defend against a retaliation charge.  The express language of

the provision requires Estée Lauder to make "reasonable efforts" to hold the terms of the

Agreement in strict confidence.  Only two pages of the twenty-two page agreement were

submitted in the position statement.  Next, Estée Lauder included a footnote explaining that it

was limiting its inclusion of the document to the one relevant portion in the entire Agreement as

compared to the *in camera* review of the entire agreement by the court in the ERISA case.  Thus,

the majority of the Agreement's terms in fact remained confidential.  Finally, Russo put the

terms of the Insert at issue by claiming that it obligated Estée Lauder to provide CNA with the

February 29, 2004 termination date and that Estée Lauder refused to do so in retaliation for the

2003 action.  Such limited disclosure of the Agreement's terms was, or should have been,

foreseeable to Russo.

Furthermore, any arguments that Estée Lauder failed to move to have the complaint in

the 2003 action sealed are misplaced.  The only document expressly requiring confidentiality is

the Agreement.

With respect to Brewington's alleged breach of the confidentiality provisions of the

Agreement, there are issues of fact as to the source of the information contained in the New York

Post article.  Although third-party defendants attribute the contents of the article to the original complaint, the article itself explicitly identifies the source of the information as Brewington.  Moreover, the article does not mention any complaint, including the original one filed in this action or the 2003 complaint available on PACER.  There is also the fact that Brewington admitted to meeting with the author of the article in his law office.  Thus, the record raises a triable issue of fact rightfully decided by a jury.  Where the record raises discrepancies concerning material facts, summary judgment may not be granted.

Finally, third-party defendants argue that third-party plaintiffs are unable to prove damages resulting from the alleged breaches.  Estée Lauder contends that it incurred significant expenses in costs and fees in discovery responding to the waived claims alleged by Russo in addition to enforcing the confidentiality provisions allegedly breached by Brewington.  If, as and when third-party plaintiffs establish that the Agreement was breached, they will then bear the burden of proving their damages to a jury.  Accordingly, plaintiff-third-party defendants' motion for summary judgment on defendants-third-party plaintiff s' complaint is hereby denied.

## V.    Conclusion

For the reasons set forth above, Estée Lauder's motion to strike is **GRANTED** in part and **DENIED** in part.  Estée Lauder's motion for sanctions is hereby **DENIED**.  Estée Lauder's motion for summary judgment on Russo's Amended Complaint is **GRANTED** and the Amended Complaint is dismissed in its entirety.  Finally, plaintiff-third-party defendants' motion for summary judgment on defendants-third-party plaintiffs' breach of contract claims is hereby **DENIED**.

**SO ORDERED**.

-59-

Dated:  March 1, 2012
         Central Islip, New York


                                                    _____/s/_____
                                                    Thomas C. Platt, U.S.D.J.